UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| JOHN DOE,<br><br>                Plaintiff,<br>v.<br><br>TRUSTEES OF DARTMOUTH COLLEGE,<br><br>                Defendant. | Civil Action No. |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS UNOPPOSED MOTION TO PROCEED UNDER A PSEUDONYM**

Plaintiff John Doe ("Doe") hereby requests permission to proceed under pseudonym in the instant case.

**STATEMENT OF FACTS**

At all times relevant to this case, Doe was a student at the Geisel School of Medicine at Dartmouth ("Geisel"). Verified Complaint ("Compl.") ¶ 17. In the early morning hours of July 12, 2020, Doe and his roommate, another Geisel student Sam Smith, engaged in oral sexual intercourse to which neither party claims to have consented. Compl. ¶¶ 28-29, 45-46, 48. On April 28, 2021, Smith submitted a formal complaint to Dartmouth College's ("Dartmouth") Title IX Office, alleging that Doe had performed oral sexual intercourse on Smith while he was asleep. Compl. ¶ 44. Smith chose to file the formal complaint only after he was falsely informed by Dartmouth's Title IX Coordinator and Acting Senior Director of Institutional Diversity and Equity ("Title IX Coordinator") that Doe was returning to Geisel for the Spring 2022 semester, while Smith would still be enrolled. Compl. ¶¶ 43-44. On June 15, 2021, Doe filed his own formal Title IX complaint against Smith, alleging that Smith had initiated the oral sexual intercourse while Doe

was incapacitated by alcohol and unable to consent.  Compl. ¶¶ 48-49.  On October 6, 2021, Dartmouth decided that Doe had engaged in some undefined nonconsensual sexual contact with Smith while he was asleep but did not find that Doe had engaged in oral sexual intercourse with Smith while he was asleep, as alleged in the Notice.  Compl. ¶ 80.  As a result, Dartmouth expelled Doe from the medical school.  *Id.*  On November 10, 2021, Dean Duane A. Compton of Geisel upheld the findings by the Investigator and Hearing Panel from the Title IX office and confirmed Doe's expulsion.  Compl. ¶ 82.

Dartmouth's investigation into Smith's and Doe's allegations and the proceedings that resulted in the sanction against Doe were procedurally deficient.  The Investigator hired by Dartmouth committed a procedural error by making a finding of responsible that did not comport with the allegation presented in the Notice of Investigation from the Title IX Office.  Compl. ¶¶ 6, 83-101.  Specifically, the Investigator failed to find that Doe performed oral sexual intercourse while Smith was asleep, as alleged in the Notice, but still found him responsible for other alleged sexual contact **not** included in the Notice.  *Id.*  The Investigator also failed to appropriately apply the preponderance standard of evidence in making its final findings by failing to consider evidence provided by Smith that he was sober and awake when the alleged incident occurred while Doe was admittedly impaired by alcohol to the point of incapacitation, and by failing to apply the standard for incapacitation by alcohol in Dartmouth's sexual misconduct policy fairly and impartially, finding that Doe "subjectively" experienced blackouts but was still responsible for initiating the intercourse, even though Smith was sober.  Compl. ¶¶ 7, 102-09.  Upon information and belief, the Investigator applied the preponderance standard inconsistently from how Dartmouth has applied the standard to intoxicated, female students in the past.  Compl. ¶¶ 110, 118-21.

As a result of Dartmouth's erroneous proceeding and decision, Doe is suffering and will continue to suffer irreparable harm. The expulsion from Geisel will significantly affect Doe's ability to have a medical career. Compl. ¶¶ 111-13. When the incident occurred, Doe was 89% finished with his degree, less than one year away from graduating from Geisel. Compl. ¶¶ 17, 112. Since the incident Doe has struggled with his mental health and decided to take a leave of absence from Geisel of his own accord, knowing that he could return to Geisel when he was ready. Compl. ¶¶ 38-40. The decision to expel Doe took away his ability to return to Geisel and created a longer gap in his education that will need to be explained to future employers, which may require disclosure of his expulsion.

The fact that Doe has been expelled—and the reason therefore—also place doubt in his ability to transfer to another medical school. Without redress from this Court, Doe's transfer application to any medical school will have to disclose the expulsion from Geisel, which will weigh against his admission. If Doe is unable to finish medical school, he will be unable to obtain a residency or to become a Primary Care Physician—a career of which he has always dreamed and of which our society is in desperate need. Doe's expulsion also leaves Doe with substantial student loan debt without the promised earning capacity necessary to pay it off in a timely manner.

Without appropriate redress from the Court, Doe will continue to suffer these and other irreparable harms. Doe seeks redress from the Court to undo the harms Dartmouth has caused and he should be allowed to do so under a pseudonym so as not to occasion the very harm he is trying to undo.

## ARGUMENT

Neither the Supreme Court nor the First Circuit have set forth a test to determine when a plaintiff may overcome the presumption of openness in judicial proceedings and proceed under a

pseudonym. Recently, however, this Court had the opportunity to address this issue and adopted the balancing test for pseudonymous litigation set forth by the Third Circuit in *Doe v. Megless*, 654 F.3d 404 (3d Cir. 2011). *See Doe v. Trs. of Dartmouth Coll.*, No. 18-cv-040-LM, 2018 WL 2048385, at *3 (D.N.H. May 2, 2018). The Third Circuit's test is used to "determine whether a litigant has a reasonable fear of severe harm that outweighs the public's interest in open litigation." *Megless*, 654 F.3d at 409. The Third Circuit's balancing test includes the following nine non-exhaustive factors:

> (1) the extent to which the identity of the litigation has been kept confidential; (2) the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases; (3) the magnitude of the public interest in maintaining the confidentiality of the litigant's identity; (4) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities; (5) the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified; and (6) whether the party seeking to sue pseudonymously has illegitimate ulterior motives . . . [(7)] the universal level of public interest in access to identities of litigants; [(8)] whether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained; and [(9)] whether the opposition to pseudonym by counsel, the public, or the press is illegitimately motivated.

*Id.* (internal citations and quotation marks omitted). When applied to the facts of this case, these factors demonstrate the necessity of a pseudonym in this case.[1]

### 1. Doe's identity—so far—has been kept confidential.

The first factor in the balancing test adopted by this Court is "the extent to which the identity of the litigant has been kept confidential." *Megless*, 654 F.3d at 409. Doe has avoided

---

[1] Other circuits have adopted different standards for litigants proceeding under pseudonym, some of which are more forgiving than the Third Circuit's standard set forth in *Megless*. *See Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185 (2d Cir. 2008); *Does 1 thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058 (9th Cir. 2000). Nonetheless, because Doe satisfies the *Megless* standard, that is the standard that has been brief herein and the others would necessarily be satisfied as well.

4

publicity in this matter, and has only discussed the case with counsel, close family, and individuals identified by Doe and Smith as potential witnesses. Accordingly, this factor weighs in favor of maintaining Doe's anonymity through the use of a pseudonym.

2. **Doe has a reasonable fear that disclosure of his identity will result in harm to his reputation and, potentially, threats and harassment.**

The basis on which Doe seeks to prevent disclosure of his name is the reputational, educational, and career harms that will befall him (and Smith) should his name be publicly released. Recent cases dealing with allegations of campus sexual assault illustrate the harassment and vitriol students accused of sexual misconduct—even those who are found not responsible for the conduct—face. For example, in 2014, Columbia University found Paul Nungesser not responsible for an allegation of sexual assault brought against him by a fellow student. (Exhibit A, news report in Nungesser case). Since the complaint publicized his name, "[h]is name has been plastered on campus bathrooms and published in easily searchable articles. His face is visible online, too, in photos that detractors have posted as warnings to strangers." (Exhibit A). In 2015, an anonymous Middlebury student won an injunction prohibiting the school from expelling him for alleged sexual misconduct. (Exhibit B, news reports in Middlebury case). In response to the federal judge's decision in the case, students on campus organized a movement to have him removed from campus, including writing messages targeting the student in public places on campus. (Exhibit B).

Doe challenges Dartmouth's unlawful determination that he committed sexual assault against Smith. A significant harm that flows from Dartmouth's illegal actions is the association of Doe's name with assault, and the attendant educational and employment losses that will follow from being identified as an assailant. Were Doe to be identified in this litigation, he would suffer the harm of having Smith's accusations against him become public knowledge. Even if Doe

5

prevails on his claims, and the Court determines that Dartmouth improperly handled the case against him, leading to erroneous decisions, Doe's name would nonetheless be forever linked with allegations of sexual assault. Because this is precisely one of the harms Doe seeks to challenge in this suit, disclosing his name is not appropriate. *See, e.g.*, *Doe v. Purdue Univ.*, 321 F.R.D. 339, 342 (N.D. Ind. 2017) ("If Plaintiff's identity is revealed, Plaintiff would suffer the very harm to his reputation that he seeks to remedy by bringing this lawsuit; in other words, if Plaintiff is successful in proving that the charges of sexual misconduct against him were unfounded and that Defendants' procedures violated his due process rights, the revelation of Plaintiff's identity 'would further exacerbate the emotional and reputational injuries he alleges.'") (internal citation omitted); *Doe v. Univ. of St. Thomas*, No. 16-cv-1127-ADM-KMM, 2016 WL 9037609, at *2 (D. Minn. May 25, 2016) ("Even if his lawsuit were successful and his claims of unfair treatment were vindicated down the road . . . the complained-of damage to Mr. Doe's reputation would be perhaps unfixable if his identity is known.").

One scholar has documented the threats and harassment plaintiffs have faced when attempting to enforce their rights in the courts. *See* Ressler, Jayne, *#Worstplaintiffever: Popular Public Shaming and Pseudonymous Plaintiffs*, 84 Tenn. L. Rev. 779, 791-96 (2017). As she argues, the law has not kept up with advances in technology that make public case information instantly accessible to anyone with an internet connection, vastly changing the impact that being party to a lawsuit has on the litigants. *Id.* at 801-04, 810. *See also Doe v. Cabrera*, 307 F.R.D. 1, 6-7 (D.D.C. 2014) ("[C]ompelling the plaintiff to identity her name on every court filing would make the plaintiff's name indefinitely available to the public. Having the plaintiff's name in the public domain, especially in the Internet age, could subject the plaintiff to future unnecessary interrogation, criticism, or psychological trauma, as a result of bringing this case. . . . Although

the Court appreciates the public benefits of the Internet, it has the unfortunate drawback of providing an avenue for harassing people as well.") (internal citation omitted).

In addition to the likely threats of harm and harassment, Doe would also face immeasurable reputational, educational, and employment harms if he were to proceed under his own name. In fact, as Doe states in his declaration attached hereto as Exhibit C, the reputational, educational, and employment harms he would incur are so great that he would forego pursuing his well-founded claims against Dartmouth rather than litigate them in his own name. (Exhibit C ¶ 11).

It is not only Doe who will suffer harm if he is required to litigate under his own name. Dartmouth is a small community; Geisel is even smaller. Both Doe and Smith were students at Geisel at the time of the incident, and they shared many of the same friends. (Exhibit C ¶¶ 4-5). Smith remains a student at Geisel. Doe does not object to allowing Smith to remain under a pseudonym in this litigation, even if the Court denies this motion. However, if Doe must litigate under his own name, it is highly likely that Smith's identity will be discovered within the Geisel community as a result of that disclosure (Exhibit C ¶ 8), and from there can be widely disseminated on the Internet.

For these reasons, this factor weighs in favor of allowing Doe to proceed under a pseudonym.

3. **There is a strong public interest in favor of maintaining Doe's anonymity because the disclosure of Doe's name will have a chilling effect on similarly situated future litigants.**

If Doe is forced to reveal his name, other similarly situated litigants will be deterred from bringing claims that the public would like to have litigated. *See Doe v. Colgate Univ.*, No. 5:15-cv-1069 (LEK/DEP), 2016 WL 1448829, at *3 (N.D.N.Y. Apr. 12, 2016) ("The Court is also mindful of the potential chilling effect that forcing Plaintiff to reveal his identity would have on

7

future plaintiffs facing similar situations."). If plaintiffs challenging university disciplinary processes are forced to reveal their identities, the mere risk of reputational harm and harassment discussed above would be enough to dissuade most litigants from filing suit, thereby removing an important check on educational institutions. Accordingly, this factor weighs in favor of allowing Doe to proceed under a pseudonym.

### 4. The public interest in knowing Doe's identity is weak as a result of the purely legal nature of the issues presented in this case.

As to the fourth *Megless* factor, there is no strong public interest in knowing Doe's name; the issues are purely legal in the sense that they deal with how Dartmouth applies its policies, and knowing the identities of the litigants will not aid the public in understanding the case. Only Doe's and Smith's names and identifying details will be inaccessible to the public; the factual allegations and the judicial records in this case will all remain available to the public. Any interest that this case holds to the public relates to current public debate regarding how universities should respond to alleged sexual assaults on campus and is unimpaired by the use of pseudonyms. The use of pseudonyms will not interfere with the public's ability to "monitor the functioning of our courts." *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987). Accordingly, this factor weighs in favor of allowing Doe to proceed under a pseudonym.

### 5. Doe will voluntarily dismiss this action and pursue it no further if required to disclose his identity.

The question for the fifth factor is whether the litigant will "sacrifice a potentially valid claim simply to preserve [his] anonymity." *Megless*, 654 F.3d at 410. As Doe states in his declaration, the reputational, educational, and employment harms he would incur are so great that he would forego pursuing his well-founded claims against Dartmouth rather than litigate them in

8

his own name. (Exhibit C ¶ 11). Accordingly, this factor weighs in favor of allowing Doe to proceed under a pseudonym.

      **6.     Doe is not seeking to use a pseudonym for any nefarious reason.**

There is no allegation that Doe is seeking to proceed anonymously for any nefarious reason. Accordingly, this factor weighs in favor of allowing Doe to proceed under a pseudonym. *See Trs. of Dartmouth Coll.*, 2018 WL 2048385, at *6.

      **7.     There is no discernable public interest in the disclosure of Doe's identity.**

Under the Third Circuit's balancing test, the first six factors—which generally weigh in favor of allowing a litigant to proceed under a pseudonym—must be balanced against the final three factors, which weigh against anonymity, and which address whether there is public interest in disclosure of the litigant's identity. *Megless*, 654 F.3d at 409. Here, as described above, there is no strong public interest in knowing the identities of Doe or Smith, other than the "universal interest in favor of open judicial proceedings." *Id.* at 411. The litigants are not, as the *Megless* court found relevant to its determination, public figures. They are two medical school students. Finally, as to the third factor that would weigh against anonymity, here there is no opposition to pseudonym by Dartmouth, and no party or intervenor has advanced any argument that the public or press have any interest in knowing Doe's and Smith's identities.

      **8.     Other plaintiffs in the First Circuit have been allowed to proceed under pseudonym in similar circumstances.**

The district courts in the First Circuit have recently heard numerous cases like Doe's by students alleging improper discipline by their colleges and universities. These courts have allowed those plaintiffs to proceed under pseudonym. *See, e.g.*, *Doe v. Trs. of Dartmouth Coll.*, No. 21-cv-85-JD, at endorsed order (D.H.H. Jan. 29, 2021); *Doe v. Trs. of Dartmouth Coll.*, No. 19-cv-13-JL at endorsed order (D.N.H. Jan. 9, 2019); *Doe v. Trs. of Dartmouth Coll.*, No. 18-cv-040-LM

9

at Docket No. 29 (D.N.H. May 2, 2018); *Doe v. Univ. of Massachusetts-Amherst*, No. 3:17-cv-30145 at Docket No. 15 (D. Mass. Oct. 18, 2017); *Doe v. Williams Coll.*, No. 3:16-cv-11740 at Docket No. 10 (D. Mass. Nov. 29, 2016); *Doe v. Brown Univ.*, No. 1:16-cv-00017 (D.R.I. Mar. 23, 2016); *Doe v. Clark Univ.*, No. 4:15-cv-40113 at Docket No. 21 (D. Mass. Feb. 3, 2016); *Doe v. W. New England Univ.*, No. 3:15-cv-30192 at Docket No. 37 (D. Mass. Feb. 2, 2016); *Doe v. Amherst Coll.*, No. 3:15-cv-30097 at Docket No. 16 (D. Mass. June 30, 2015); *Doe v. Boston Coll.*, No. 1:15-cv-10790 at Docket No. 17 (D. Mass. June 22, 2015); *Doe v. Brandeis Univ.*, No. 1:15-cv-11557 at Docket No. 28 (D. Mass. June 17, 2015); *Doe v. Brown Univ.*, No. 1:15-cv-00239 at Docket No. 3 (D.R.I. June 15, 2015); *Doe v. Brown Univ.*, No. 1:15-cv-00144 at Docket No. 4 (D.R.I. Apr. 17, 2015); *Doe v. Univ. of Massachusetts-Amherst*, No. 3:14-cv-30143 at Docket No. 30 (D. Mass. March 30, 2015); *Doe v. Williams Coll.*, No. 1:13-cv-11740 at Docket No. 12 (D. Mass. Sept. 5, 2013). *See also Colgate Univ.*, 2016 WL 1448829, at *3 ("[T]he Court takes not that courts across the country have allowed plaintiffs alleging similar claims against colleges and universities stemming from investigations of sexual assault to proceed anonymously.").

Like these students, Doe has demonstrated the serious harm that will befall him if he is required to litigate this case under his own name and so should be permitted to proceed under a pseudonym.

### 9. First Circuit cases rejecting a plaintiff's request to proceed by pseudonym are distinguishable from this case.

District court cases rejecting a plaintiff's request to proceed by pseudonym in the First Circuit are distinguishable from Doe's case here. For example, in *Doe v. Bell Atlantic Business System Services, Inc.*, 162 F.R.D. 418 (D. Mass. 1995), the District of Massachusetts denied a motion to proceed by pseudonym by a plaintiff alleging sexual assault and harassment against her supervisor. There, the plaintiff had named as an individual defendant, under his real name, the

10

supervisor that she alleged had harassed and assaulted her, and the defendant strenuously opposed her request to proceed under a pseudonym, arguing that he was suffering reputational harm as a result of her allegations and that it was unfair to allow her to make the claims anonymously. *Id.* at 421-22. Here, Dartmouth, as an institutional defendant, has not suffered similar harms; Dartmouth also assents to Doe's request to proceed under a pseudonym. Doe has not named Smith as an individual defendant in this case. In addition, in *Doe v. Bell Atlantic Business Systems Services, Inc.*, the plaintiff had already used her real name in administrative proceedings, leading the court to conclude that the issue was effectively moot. *Id.* at 422. Finally, that case is more than twenty-five years old. When it was decided the Internet was in its infancy and social media did not exist. The kind of harassment that individuals participating in lawsuits viewed as unsympathetic experience today is extremely different in kind and type than anything that the *Doe v. Bell Atlantic Business Systems Services, Inc.* plaintiff would likely have experienced. *See* Ressler, Jayne, *supra*.

In *Liberty Media Holdings, LLC v. Swarm Sharing Hash File*, 821 F. Supp. 2d 444 (D. Mass. 2011), the plaintiff brought a copyright infringement suit against individuals who allegedly reproduced and distributed one of its adult films. In determining that these defendants would not be allowed to remain anonymous in the litigation, the court did not identify any federal or even appellate law, and instead relied on case law from the Massachusetts Superior Court, which cases some doubt on its precedential value in this action. *See id.* at 446. The court ultimately held that, where the only grounds articulated for remaining anonymous was the "potential embarrassment to Does 1-38 of being associated with allegations of infringing hardcore pornography," the justification for anonymity was insufficiently compelling. *Id.* at 453. Here, as set forth above,

Doe has well-founded fears that he will experience wholesale shunning and harassment that will destroy his prospects for future education and employment.

## CONCLUSION

While the First Circuit has not yet enunciated the balancing test to use to determine when a plaintiff may proceed by pseudonym, this Court has adopted the Third Circuit's balancing test. Because of the serious risk of harm to Doe and Smith, the lack of prejudice to Dartmouth, and the minimal impact the use of pseudonyms will have on the public's access to the case, Doe's motion should be granted. For the foregoing reasons, Doe respectfully requests that this Court grant his motion to proceed under pseudonym. Doe requests oral argument.

Date: January 20, 2022                                          Respectfully submitted,

/s/ *William E. Christie*
William E. Christie (NH Bar #11255)
S. Amy Spencer (NH Bar #266617)
Olivia F. Bensinger (NH Bar #274145)
SHAHEEN & GORDON, P.A.
107 Storrs Street
Concord, NH 03302
(603) 225-7262
wchristie@shaheengordon.com
saspencer@shaheengordon.com
obensinger@shaheengordon.com

*Attorneys for plaintiff John Doe*

## CERTIFICATE OF SERVICE

I, William E. Christie, hereby certify that a copy of the foregoing document, filed through the CM/ECF system, will be served conventionally on all parties or their counsel.

/s/ *William E. Christie*
William E. Christie