UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

JOHN DOE,

        Plaintiff

     v.

TRUSTEES OF DARTMOUTH COLLEGE,

        Defendant

Civil Action No:  1:22-cv-00018-LM

**DEFENDANT'S MEMORANDUM OF OBJECTION TO PLAINTIFF'S MOTION
FOR A PRELIMINARY INJUNCTION AND EXPEDITED RELIEF**

Defendant Trustees of Dartmouth College ("Dartmouth") submits this memorandum of objection to Plaintiff's motion for a preliminary injunction and expedited relief.  In connection with its objection, Dartmouth also submits the Declarations of Kristi L. Clemens, Katharine R. Strong, and Michael J. Stackow.

**RELEVANT FACTS**

The plaintiff, John Doe, was a student at Dartmouth's Geisel School of Medicine.  He shared an apartment with "Sam Smith," a friend and fellow student at Geisel.  On the night of July 20, 2020, Doe and Smith got take-out food, drank beer and cocktails, and watched a movie, during which they both fell asleep on the couch.  *Compl*. ¶¶ 1, 2, 24-27.

While certain aspects of what happened next are disputed, the following essential facts are not:  Smith woke up to a sensation of "caressing" around his penis.  *Id.* ¶ 92.  As he was opening his eyes, he saw that his underwear was pulled down, with his erect penis exposed, and then saw Doe perform oral sex on him.  At no point did Smith indicate that he consented to Doe performing oral sex on him.  Exhibit 10, *Investigation Report* at 9-11 (summary of Smith's account), 16-18 (summary of Doe's account).[1]  It also is undisputed that over the next few hours

---

[1] The Exhibits referenced herein are the Exhibits to the Declaration of Kristi L. Clemens.

and again the next day, Doe apologized to Smith multiple times, both verbally and by text message.  In his text messages, Doe offered to move out of the apartment and never to see Smith again.  Doe also sent a text to Smith's girlfriend, apologizing for his "inexcusable" conduct, about which he was "mortified and ashamed."  *Id*. at 46-48.

Doe took a leave of absence from school and sought mental health counseling.  *Compl*. ¶¶ 40-41.  Doe alleges that in December 2020, he told the Geisel registrar that he intended to return in the fall of 2022, by which time Smith was expected to have graduated.  *Id*. ¶ 43.

In March and April 2021, Smith met three times with Kristi L. Clemens, Dartmouth's Title IX Coordinator.  *Clemens Decl.* ¶ 3.  Smith inquired about Doe's anticipated return from leave.  *Id*.  Clemens checked with Geisel's registrar, who informed Clemens that Doe was not presently enrolled but could return as early as April 2022, which Clemens then shared with Smith.  *Id.* ¶ 4.  Clemens's disclosure was in accordance with the Geisel's Student Education Records Policy, which permits Dartmouth officials to disclose a student's enrollment status and dates of attendance.  Exhibit 1, *Records Policy* at 3.

On April 28, 2021, Smith filed a formal "Title IX complaint" with Clemens's office, alleging that Doe performed nonconsensual oral sex on Smith while Smith was asleep.  *Compl*. ¶ 44.  A "Title IX complaint" is shorthand for a complaint that someone has violated Dartmouth's Sexual and Gender-Based Misconduct Policy ("Sexual Misconduct Policy"), *Compl*. Ex. A, which Dartmouth adopted in accordance with Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, et seq.

Relevant to this case, the Sexual Misconduct Policy prohibits "sexual assault," which includes having any sexual contact with another person without that person's consent.  *Sexual Misconduct Policy* at 7-8.  "Consent" means "an affirmative and willing agreement to engage in

specific forms of sexual contact with another person" and "requires an outward demonstration, through mutually understandable words or actions, indicating the individual has freely chosen to engage in sexual contact." *Id*. at 9. "Silence, passivity, or the absence of resistance does not imply consent," nor can consent be "assum[ed]." *Id*. at 10. A person cannot effectively consent to a sexual act while they are "incapacitated," which means "the inability, temporarily or permanently, to give consent because [the] individual is mentally and/or physically helpless, asleep, unconscious, or unaware that sexual activity is occurring." *Id*.

Smith's complaint was addressed pursuant to Dartmouth's Process for Resolving Complaints Against Students Pursuant to the Sexual Misconduct Policy ("Process for Resolving Complaints"), *Compl*. Ex. B; *Compl*. ¶ 50; *Clemens Decl.* ¶ 12. Smith elected to pursue a "formal resolution process." *Clemens Decl.* ¶ 5; Exhibit 2. In accordance with that process, Clemens issued a Notice of Investigation to both parties[2] and appointed Michael J. Stackow to conduct an investigation. *Clemens Decl.* ¶ 6-7. Stackow is an attorney at the law firm Cozen O'Connor, where he regularly conducts sexual misconduct investigations and provides training for educational and other clients on conducting investigations. *Stackow Decl*. ¶¶ 1-2. He also is a former assistant district attorney with nearly twenty years of experience prosecuting and investigating sex crimes. *Id*. ¶ 4.

In Doe's first interview with Stackow, Doe claimed to have been the victim of sexual misconduct by Smith. *Clemens Decl.* ¶ 8. Upon learning this, Clemens contacted Doe to inquire whether he wished to file a complaint against Smith, which Doe then decided to do. On June 15, 2021, Doe filed a Title IX complaint against Smith, alleging that Smith "took advantage of my incapacitated state while I was intoxicated with alcohol and initiated the events that led me to

---

[2] The original Notice inadvertently referenced an incorrect version of the Sexual Misconduct Policy and Process. The revised Notice corrected that reference but otherwise was the same as the original Notice. *Compl*. ¶ 50 n.2.

perform oral sexual intercourse without my consent."  Exhibit 2, *Doe's Compl.*  Doe claimed that Smith "initiated the events that led [him] to perform oral sexual intercourse" by running his hand through Doe's hair.  *Id.*  Clemens issued a Notice of Investigation to both parties.  *Compl*. ¶ 49; *Clemens Decl.* ¶ 10; Exhibit 4, *Revised Notice*.  Stackow investigated Doe's cross-complaint against Smith simultaneously with Smith's complaint against Doe.  Exhibit 10, *Inv. Report* at 2; *Clemens Decl.* ¶ 11.

Stackow conducted a thorough investigation, which included two interviews of Smith, three interviews of Doe, interviews of nine other witnesses, and the collection and review of documentary evidence including numerous emails and text messages.  Exhibit 10, *Inv. Report* at 6-7, 54-55.  Stackow prepared a comprehensive report of his investigation – over 50 single-spaced pages, not including its appendices – which includes a careful review of the parties' statements and other evidence.  *Id*.

Stackow prepared an initial investigation report and appendix of exhibits, which was made available to Smith and Doe for their review.  Exhibit 10, *Inv. Report* at 7; Exhibit 5, *Initial Report*.  Both parties submitted written responses, which included several attachments.  Exhibits 6 & 7, *Responses*; Exhibit 10, *Inv. Report* at 7.  Each party also reviewed and responded to the other party's response.  Exhibit 10, *Inv. Report* at 7.  Stackow considered all of this feedback and prepared a final report, dated August 31, 2021, which Clemens shared with the parties on September 3, 2021.  *Id*. at 1, 7; *Clemens Decl.* ¶ 13.  Throughout the process, Doe had the assistance of counsel, who now represents him in this case.  *Clemens Decl.* ¶ 14.

Stackow's final report states that he found sufficient evidence to support a finding, by a preponderance of the evidence, that Doe engaged in sexual contact with Smith when Smith was unable to consent because he was asleep.  Exhibit 10, *Inv. Report* at 51.  Citing Smith's

"credible, detailed account," Stackow found the evidence supported a finding that Smith was asleep when the sexual contact began and was in the process of waking up, with half-opened eyes, when he saw Doe kneeling in front of him and then saw Doe perform oral sex on him. *Id.* at 46, 51-52. Stackow credited Smith's account that a sensation of sexual contact caused him to begin waking up; that before he was fully awake, he saw Doe performing oral sex on him; and that upon being fully awake, he then was able to stop the sexual contact. *Id.* at 42-43. Stackow found that Smith did not say or do anything to initiate or facilitate the sexual contact or to indicate that he consented to it. *Id.* at 51. Stackow found that even if Smith ran his hand through Doe's hair, as Doe claimed, that conduct did not amount to an "outward demonstration" of consent by Smith to engage in the sexual contact. *Id.*

Stackow also found that the evidence did not support a finding that Doe engaged in sexual contact at a time when he was unable to consent due to incapacitation. *Id.* at 51-52. Stackow found that Doe demonstrated through his physical actions that he initiated and consented to the sexual contact – specifically, by positioning his body, grabbing Smith's penis, looking up at Smith, and putting Smith's penis in his mouth. *Id.* at 51. Stackow noted that although Doe may have experienced a "fragmentary blackout" due to intoxication, his actions in initiating and performing oral sex indicated that he was not incapacitated. *Id.* at 51-52.

In accordance with the Process for Resolving Complaints, the parties were allowed to submit written responses to the final investigation report. *Process*, Compl. Ex. B, at 16. Then a three-person Hearing Panel was convened to determine whether (1) there was any material, procedural error that substantially impacted the outcome or (2) the investigator failed properly to apply the preponderance of evidence standard. *Id.* The three-member Panel was chaired by Katharine L. Strong, the Director of Dartmouth's Office of Community Standards &

5

Accountability.  *Strong Decl.* ¶ 2.  The Panel members all were formally trained in the handling

of sexual misconduct hearings, including how to serve as a panel member under Dartmouth's

policy.  *Id*. ¶ 3.

The Panel reviewed the investigative report and its appendices and the statements

submitted by both parties, including both parties' responses to the initial report, Doe's response

to Smith's initial report submission, Doe's response to the final report, and Smith's written

statement to the hearing panel.  *Strong Decl.* ¶ 4.  In addition, the Panel conducted a live hearing,

which both Smith and Doe attended.  *Id.* ¶ 5.  Stackow, the investigator, also participated.  *Id.*

Doe argued in his response to the final investigative report that Stackow failed properly

to apply the preponderance of evidence standard, by failing properly to consider the evidence

relating to whether Smith was awake during the oral sex and the evidence relating to Doe's own

intoxication.  Exhibit 11, *Doe Response* at 4-6.  Doe also argued that a procedural error had

occurred because Stackow's determination of responsibility did not align with the Notification of

Investigation; Doe argued that although the Notice of Investigation said he was being accused of

performing oral sex on Smith while Smith was asleep, Stackow made no such finding – instead,

Stackow concluded that Doe "caressed" Smith while Smith was asleep, with the oral sex

occurring only after Smith woke up.  *Id*. at 1-3.  During the hearing, Doe argued that Smith's

account that he was asleep during the oral sex was not credible, that the finding of the noticed

charge was not supported, and that Doe was incapacitated from alcohol and thus unable to

consent to the sexual activity that he engaged in.  *Strong Decl.* ¶ 7.

The Panel asked Stackow to clarify his finding and rationale with respect to Smith's state

of consciousness during the oral sex.  *Id.* ¶ 8; Ex. 12, *Hearing Tr.* at 17.  Stackow affirmed that

he found, by a preponderance of the evidence, that Smith was asleep during the oral sexual

intercourse:  he found that oral sex first occurred while Smith was fully asleep, which caused Smith to wake up, and that oral sex resumed while Smith was in the process of waking up, but not yet fully awake.  *Id.*; *Hearing Tr.* at 12, 17-19.  Stackow explained that he wrote the ultimate finding in his report in more general terms – that the evidence supported a finding of "sexual contact without consent," without specific reference to Smith being asleep – so as to track the wording of the Sexual Misconduct Policy, which defines "sexual assault" as "sexual contact with another individual without consent."  *Strong Decl.* at 9; *Hearing Tr.* at 13-12; *Policy* p. 7.

Before Doe gave his closing statement at the hearing, the Panel chair asked Doe, "Have you had a full and fair opportunity to address the information in the final investigation report, as well as the supplemental statements submitted in response to the final investigation report?"  Doe responded, "Yes I believe so."  *Strong Decl.* ¶ 10; *Hearing Tr.* at 21.

The Panel met to deliberate on all of the information presented in the various written submissions and at the hearing.  *Id.* ¶ 11.  The Panel concluded that Stackow properly applied the preponderance of evidence standard and it upheld his finding that Doe engaged in oral sexual intercourse without Smith's consent while Smith was asleep.  *Strong Decl.* ¶ 12; Exhibit 13, *Outcome Letter* at 1.  The Panel thus rejected Doe's claim that the finding of sexual contact without Smith's consent was inconsistent with the charge in the Notice of Investigation.  *Strong Decl.* ¶ 12; *Outcome Letter* at 1.

The Panel also upheld Stackow's finding that Doe was not incapacitated and thus was not unable to consent to the oral sex that he performed.  *Strong Decl.* ¶ 12; *Outcome Letter* at 1. The Panel considered Doe's claimed incapacitation in relation to his complaint that he was the victim of conduct that Smith "initiated."  *Strong Decl.* ¶ 13.  The Panel concluded that Stackow properly applied the preponderance of evidence standard in his findings not only that Smith did

not "initiate" the oral sex that Doe performed but also that Doe in any event was not

incapacitated when he was performing the oral sex. *Id*. Whether Doe was incapacitated is

irrelevant under the Sexual Misconduct Policy to Smith's charge that Doe assaulted him; a policy

violation occurred if Doe performed oral sex on Smith without Smith's consent, regardless of

whether Doe was incapacitated at the time. *Clemens Decl.* ¶ 16.

Finally, the Panel also determined that Doe's "separation" (i.e., expulsion) from

Dartmouth was the appropriate sanction. *Outcome Letter* at 1-2.

The Process for Resolving Complaints allows for appeals on grounds of (1) substantial

procedural error or bias that materially affected the outcome and/or sanction or (2) new evidence

not reasonably available at the time of the hearing. *Compl*. Ex. B at 22. Appeals by Geisel

students are heard by the Dean of the Geisel School. *Id*. at 23. Doe appealed, claiming

procedural error based upon the claimed disconnect between the Notice of Investigation and the

findings and based upon an alleged failure properly to apply the preponderance of evidence

standard. Exhibit 14, *Appeal*.

The Dean, Dr. Duane A. Compton, denied the appeal. With respect to Doe's notice

argument, the Dean was "not persuaded that a wording distinction between the Notice and the

Final Report related to the wakefulness of [Smith] provides sufficient basis" to find a procedural

error that materially affected the outcome. Exhibit 15, *Appeal Decision* at 2. The Dean noted

that Doe's argument "seeks an exceedingly narrow technical distinction that appears to

circumvent the events that occurred which involve sexual contact in the absence of consent." *Id*.

Regarding Doe's second point, the Dean also was not persuaded that the preponderance of the

evidence failed to support a finding that Doe initiated and consented to the sexual contact. *Id*.

**ARGUMENT**

## I.     DOE SEEKS MANDATORY RELIEF, WHICH IS STRONGLY DISFAVORED.

Preliminary injunctive relief typically is allowed only to preserve the status quo, *i.e.*, to

enjoin the non-moving party from taking some action.  *See Braintree Lab's, Inc. v. Citigroup*

*Global Markets Inc.*, 622 F.3d 36, 41 (1st Cir. 2010); *Bercovitch v. Baldwin School, Inc.,* 133

F.3d 141, 151 (1st Cir. 1998); *Merrimack Congregation of Jehovah's Witnesses v. Town of*

*Merrimack*, No. 10-CV-581-JD, 2011 WL 1236133, at *2 (D.N.H. Mar. 31, 2011).

Mandatory injunctions, which alter the status quo, are disfavored.  *L.L. Bean, Inc. v. Bank*

*of Am.*, 630 F. Supp. 2d 83, 89 (D. Me. 2009) (collecting cases); *Isaacs v. Trs. of Dartmouth*

*Coll.*, No. 17-CV-040-LM, 2017 WL 4119611, at *3 (D.N.H. Sept. 14, 2017); *Potts NH RE, LLC*

*v. Northgate Classics, LLC*, No. 12-CV-82-SM, 2012 WL 1964554, at *3 (D.N.H. May 10,

2012), *report and rec. adopted*, No. 12-CV-82-SM, 2012 WL 1969051 (D.N.H. May 30, 2012).

A party seeking mandatory injunctive relief must meet an "elevated" burden,

demonstrating that "the exigencies of the situation demand such relief."  *Braintree Labs.*, 662

F.3d at 41; *see also NBA Properties, Inc. v. Gold*, 895 F.2d 30, 33 (1st Cir. 1990); *Mass.*

*Coalition of Citizens with Disabilities v. Civil Defense Agency,* 649 F.2d 71, 76 n.7 (1st Cir.

1981).  A "mandatory injunction should not issue unless the facts and the law clearly favor the

moving party."  *Robinson v. Wall*, C.A. 09-277-S, 2013 WL 4039027, at *2 (D.R.I. Aug. 7,

2013); *see also L.L. Bean*, 630 F. Supp. 2d at 89.

The status quo is that Doe was on leave from the Geisel School, with no plan to return

before the fall of 2022, when he was found responsible for sexual misconduct and expelled.  He

now seeks a "preliminary injunction enjoining Dartmouth from enforcing [his] expulsion and

ordering it to allow him to return to campus, attend classes, and participate in all campus

activities pending the outcome of this action."  *Compl*. at p. 25.  Doe does not seek to enjoin

Dartmouth from finding him responsible or from expelling him, which already have occurred.

Instead, Doe seeks mandatory injunctive relief, which would alter the status quo.

There are no special "exigencies" that favor the granting of such extraordinary relief –

especially where Doe waited over two months after his appeal was denied to seek relief from this

Court – nor does "the law clearly favor the moving party," for the reasons that follow.

## II.    DOE HAS NO LIKELIHOOD OF SUCCESS ON THE MERITS.

### A.    The Contract Claims

The college-student relationship is contractual in nature.  *Gamble v. Univ. Sys. of New

Hampshire*, 136 N.H. 9, 13 (1992).  The interpretation of that contract is a question of law for the

Court, to which traditional contract principles apply, but with the Court taking into account the

distinctive nature of the college-student relationship.  *Id.*  The contract, which may include

student handbooks and policies, should be given the meaning that a reasonable student would

ascribe to it.  *Id.*

#### 1.    Doe's FERPA claim has no merit.

Doe alleges that Dartmouth violated the Family Educational Rights and Privacy Act

(FERPA) when Clemens disclosed to Smith that Doe was expected to return from his leave of

absence for the Spring 2022 semester.  Pl. Mem. at 6.  As Doe concedes, there is no private right

of action under FERPA.  *Id.*  Thus, the claim that Dartmouth "violated FERPA" is a non-starter.

The question is whether Dartmouth violated a contractual obligation to Doe, by failing to comply

with the policy it adopted in accordance with the statute and the regulations adopted thereunder

by the Department of Education (DOE).  The answer is that Dartmouth did not.

The FERPA regulations require each school that receives DOE funding to provide its

students with an "annual notification" of their FERPA rights including, among other things, what

the school includes within its definition of "directory information."  34 CFR §§ 99.37, 99.7.

"Directory information" is among the categories of student information which a school can

disclose without a student's consent, and a school may define "directory information" to include,

among other things, a student's "enrollment status" and "dates of attendance."  20 U.S.C. §

1232g(a)(5); 34 CFR §§ 99.31, 99.37.  The Geisel School makes its annual notification of

FERPA rights in its Student Education Records Policy, which is posted online and which defines

"directory information" to include, among other things, a student's "enrollment status" and

"dates of attendance."  Exhibit 1, *Records Policy*, at 3.  Thus, Clemens did not violate the

school's FERPA policy by disclosing to Smith the anticipated timeframe for Doe's return from

leave.  *See Fonovisa, Inc. v. Does 1-9*, No. CIV. A. 07-1515, 2008 WL 919701, at *7 (W.D. Pa.

Apr. 3, 2008) (FERPA "expressly authorizes" a school that complies with FERPA's rules on

"directory information" to disclose such information without the student's prior consent).

Even if Doe could establish that Clemens's disclosure about his anticipated return from

leave was a violation of the Student Education Records Policy, which he cannot do, that

violation would fail to support his breach of contract claim in any event.  Under New Hampshire

law, Doe can recover in contract only for harm that is a foreseeable consequence of the breach.

*Indep. Mech. Contractors, Inc. v. Gordon T. Burke & Sons, Inc.*, 138 N.H. 110, 113 (1993).  The

harm for which Doe seeks to recover is his allegedly wrongful expulsion from Dartmouth.  That

alleged harm was not a foreseeable consequence of Clemens's disclosure to Smith.

### 2.    Doe's Notice Claim is Without Merit.

Doe claims that Dartmouth breached its promise to provide adequate notice of the charge

for which he was found responsible because the Notice of Investigation alleged that he engaged

in oral sexual intercourse without Smith's consent when Smith was asleep, but the investigator

made no such finding.  *Pl. Mem*. at 9.  That argument misstates the record.  Stackow found, by a preponderance of the evidence, that Doe first performed oral sex on Smith while Smith was fully asleep, which caused Smith to begin waking up, and then performed oral sex on Smith again while Smith was opening his eyes but not yet fully awake, and the Hearing Panel affirmed those findings.  *Strong Decl.* ¶ 8, 12; *Hearing Tr.* at 12, 17-19.

Moreover, even if it were the case, as Doe alleges, that Stackow found that Smith only "caressed" Smith's penis while Smith was asleep, and that Doe performed oral sex only after Smith was awake, Doe's "notice" argument fails in any event.  Doe was fully apprised of Smith's allegations, which remained consistent throughout the case:  Smith alleged that while he was sleeping on the couch, Doe touched him sexually in some way, which caused him to wake up; when he did so, he saw that his underwear was pulled down, exposing his erect penis; he saw that Doe was kneeling in front of him; then he saw Doe perform oral sex on him – all without his consent.  Doe had ample opportunity to respond to Smith's account, not only in multiple interviews with the investigator, but also in multiple written submissions before and after the issuance of the final investigative report, at the hearing, and in his appeal.  Doe contested that Smith was asleep when Doe performed oral sex on him, but he never contested that he touched Smith sexually while he was asleep – instead, he argued that "caressing" Smith was not the same as oral sex.  Nor did Doe contest that he performed oral sex on Smith at least while Smith was awake.  Nor did Doe ever contend that Smith communicated consent to Doe pulling down his shorts, touching his penis while he was asleep, or performing oral sex at any time.  Instead, Doe's defense was that Smith "initiated" the sexual contact by running his fingers through Doe's hair and that Doe then performed oral sex while he was incapacitated by his own intoxication.

The fact that the Notice of Investigation did not parse all of the potential findings more finely is of no consequence.  Notably missing from Doe's "notice" argument is any claim that because of the supposedly insufficient notice, there was some evidence that he otherwise would have offered, or some argument that he otherwise would have made in his defense, that could have changed the outcome.  Not surprisingly, he makes no such assertion.  Absent such a showing, his "notice" argument fails.  *See Doe v. Stonehill College, Inc.*, CA. No. 20-10468-LTS, 2021 WL 706228, *13 (D. Mass. Feb. 23, 2021) (a student's "reasonable expectation" is that a disciplinary process will be "free from errors that cause significant prejudice and affect the outcome," not "entirely free from minor errors"); *Doe v. Brown Univ.*, 210 F. Supp. 3d 310, 331 (D.R.I. 2016) ("[A] student is not entitled to a perfect disciplinary process, and it is not the Court's role to be an appeals court for [the university's] disciplinary decisions.  Nor is it the case that any minor technical violation entitles a student to a new disciplinary hearing or a review by this Court.").

   Doe's notice argument is analogous to one that the Eighth Circuit recently rejected in *Doe v. Univ. of Arkansas - Fayetteville*, 974 F.3d 858, 867 (8th Cir. 2020).  The plaintiff in that case argued that he lacked reasonable notice of a claim of sexual assault "through use of force," where the original notice alleged only sexual assault through lack of consent due to incapacitation.  The complainant did not claim the plaintiff had used force until her appeal, but the Court found that the plaintiff at that point had reasonable notice of these arguments and an opportunity to respond to them.  *Id.* at 867.  Similarly in this case, Doe was on notice of Smith's allegations in their entirety, including that sexual activity occurred both before and after Smith was awake – through his multiple interviews with the Investigator, his review of the draft investigation report, and his review of the final investigation report.  Doe had an opportunity to

respond to those allegations on multiple occasions – in his response to the draft investigation report, his response to the final report, and during the hearing – and he affirmed that he had a full and fair opportunity to address all of the allegations.  *Strong Decl.*, ¶ 19; *Hearing Tr.* at 21.

The cases on which Doe relies for his "notice" argument are easily distinguished.  In *Nokes v. Miami Univ.*, 2017 WL 3674910 (S.D. Ohio Aug. 25, 2017), *Pl. Mem.* at 9, the written notice at issue made no mention of the complainant's alleged intoxication and the plaintiff otherwise received no notice that intoxication might be at issue until a week before the hearing, after he had been required to submit a statement and other evidence.  2017 WL 3674910, at *10.  No such thing occurred in this case.  Doe was fully apprised of Smith's allegations and had ample opportunity to respond both before the hearing – following his review of the preliminary report and following his review of the final report – and at the hearing.  Moreover, as noted above, he acknowledged having sufficient opportunity to respond.

Also inapposite is *Doe v. W. New England Univ.*, 228 F. Supp. 3d 154 (D. Mass. 2017), *Pl. Mem.* at 9, in which a university found the plaintiff responsible for sexual misconduct by applying a newly adopted definition of that term, from a policy which had not been published at the time of the conduct at issue, and which differed from the policy referenced in the notice that plaintiff received.  *Id.* at 181.  There is no such issue in this case.  *Compl.* ¶ 50, n.2.

Doe's citation to the notice standards in the current Title IX regulations, *Pl. Mem.* at 10, is irrelevant to his breach of contract claim.  The question is not whether Dartmouth violated any notice requirement in the regulations, which do not give rise to any private right of action, *Gebser v. Lago Vista Ind. Sch. Dist.*, 524 U.S. 274, 291-92 (1998), but whether Dartmouth violated any notice requirement in its Process for Resolving Complaints, *Compl.* Ex. B at 10-11.  Moreover, the current Title IX regulations do not apply to conduct that occurred before the

effective date of the regulations, August 14, 2020.  *See* Nondiscrimination on the Basis of Sex in

Education Programs or Activities Receiving Federal Financial Assistance, 85 Fed. Reg. 30026,

30028 (May 19, 2020), codified at 34 C.F.R pt. 106; *see also* Part 1: Questions and Answers

Regarding the Department's Title IX Regulations, U.S. Dept. of Education, January 15, 2021 at

p. 2, available at https://www2.ed.gov/about/offices/list/ocr/docs/qa-titleix-part1-20210115.pdf.

Doe had no reasonable expectation that Dartmouth would follow the new regulations with

respect to Smith's complaint concerning conduct that occurred in July 2020.

**3.      Doe's Claims About the Preponderance of Evidence Lack Merit.**

Doe claims that Dartmouth breached its promise to conduct a fair, thorough, and

impartial investigation because the investigator failed to apply the preponderance of the evidence

standard – specifically, by failing properly to consider (a) supposed inconsistencies in Smith's

account, (b) the distinction between "caressing" Smith's penis and performing oral sex while

Smith was asleep, and (c) evidence concerning Doe's level of intoxication.  *Pl. Mem.* at 10-13.

Doe's argument is belied by Stackow's report, which amply demonstrates his careful

assessment of each of these issues.  Stackow took pains to carefully assess the details of both

Smith's account, Exhibit 10, *Inv. Report* at 8-14, and Doe's account, *id*. at 14-21, and to explain

the rationale for his findings.  *Id*. at 42-52.

Doe's disagreement with those findings – his argument that the evidence should have led

Stackow to reach a different result – fails to support a claim that Dartmouth breached its

contractual obligations to him.  *See Doe v. Williams Coll.*, 530 F. Supp. 3d 92, 99 (D. Mass.

2021) (whether a different factfinder might reach a different outcome "is not a relevant line of

inquiry"); *Doe v. W. New Engl. Univ.*, 228 F. Supp. 3d at 180 (because there "was an evidentiary

basis for the [board's] decision," plaintiff's "disagreement with that decision does not constitute

a claim upon which relief can be granted"); *Doe v. Phillips Exeter Acad.*, No. 16-CV-396-JL, 2016 WL 6651310, at *2 (D.N.H. Nov. 10, 2016) (it "is not the court's role in contract-based cases such as this" to conduct an "appellate review of the investigator's factual findings and conclusions"); *Doe v. Brown Univ.*, 210 F. Supp. 3d at 313 (the court "is not a super-appeals court for sexual misconduct cases"); *Gomes v. Univ. of Maine Sys.*, 365 F. Supp. 2d 6, 14 (D. Me. 2005) (it is not the court's task to make an independent determination about the underlying events or who was credible); *see also Schaer v. Brandeis Univ.*, 432 Mass. 474, 479 n.9 (2000) (where there was evidence that could support the board's decision, the existence of conflicting evidence failed to support a breach of contract claim).

### 4.   Doe's Bias Claim Has No Merit.

Doe alleges that Stackow applied the preponderance of evidence standard differently to him because he is male rather than female, which violates Dartmouth's obligation to provide a fair and impartial process. *Pl. Mem.* at 14. Specifically, Doe contends "[u]pon information and belief" that "Dartmouth has credited intoxicated cisgender female students alleging sexual assault against cisgender male students when the female student could not remember specific details of the alleged assault either at all or could not remember the details of the alleged events in a linear fashion in similar circumstances, whereas the investigator in this case held the same facts against Doe's credibility, resulting in a finding that Doe was responsible against the preponderance of the evidence." *Id*.

This claim is entirely without merit for several reasons. As an initial matter, Doe has the burden to come forward with specific evidence of bias in the record of his case, not just "speculation" or "tenuous inferences." *Doe v. Trs. of Bos. Coll.*, 892 F.3d 67, 84 (1st Cir. 2018) (*Boston College I*) (citations omitted). Such "specific evidence" is required to overcome courts'

presumption that, as a legal matter, university officials – including those involved in student conduct matters such as this one – act without bias.  *Id*.  Doe cites no such evidence.  He has identified no comparable case involving a female complainant, and his assertion that such cases exist "upon information and belief" fails to justify the "extraordinary remedy" of preliminary injunctive relief.  *Marshall Durbin Farms, Inc. v. Nat'l Farmers Org., Inc.*, 446 F.2d 353, 357 (5th Cir. 1971); *Bowles v. Montgomery Ward & Co.*, 143 F.2d 38, 42 (7th Cir. 1944); *see also Eaton v. Fed. Nat. Mortg. Ass'n*, 462 Mass. 569, 590 (2012); 11A Wright & Miller, Fed. Prac. & Proc. Civ. § 2949 (3d ed. 2002).

Nor will any such evidence be forthcoming in discovery, as Doe speculates will be the case.  *Pl. Mem.* at 20.  In fact, there have been multiple cases at Dartmouth in just the past few years in which a female complainant alleged sexual assault by a male respondent, but the finding was "not responsible," and a significant factor in that outcome was the female complainant's inability to provide a cogent account of what allegedly happened as a result of her intoxication during the events at issue.  *Clemens Decl.* ¶ 17.

**B.      Doe is Not Likely to Succeed on His Title IX Claim.**

Doe alleges that Dartmouth discriminated against him on the basis of his gender in violation of Title IX, asserting the theories of "erroneous outcome" and "selective enforcement." *Pl. Mem.* at 16-19.  Doe has no likelihood of success on the merits of either claim.

**1.      Erroneous Outcome**

To succeed on an erroneous outcome claim, Doe first must offer evidence that would "cast some articulable doubt on the accuracy of the outcome" of the investigation.  *Boston College I*, 892 F.3d at 91 (citing *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994)).  Such doubt may be shown, for example, by "particular evidentiary weaknesses" in the case or "particular procedural flaws affecting the proof."  *Doe v. Harvard Univ.*, 462 F. Supp. 3d 51, 60 (D. Mass. 2020)

(quoting *Yusuf*, 35 F.3d at 715).  If Doe provides sufficient evidence of a flawed outcome, he then must demonstrate that gender bias was the cause of that outcome.  *Boston College I*, 892 F. 3d at 91.  He "cannot merely rest on superficial assertions of discrimination, but must establish that 'particular circumstances suggest[] that gender bias'" caused the outcome, *id.* (quoting *Yusuf*, 35 F.3d at 715), such as statements by decision-makers or other "pertinent university officials, or patterns of decision-making that … tend to show the influence of gender."  *Yusuf*, 35 F.3d at 715.  Moreover, Doe must demonstrate that gender bias is the "but for" cause of the outcome, not merely a "motivating factor."  *Sheppard v. Visitors of Va. St. Univ.*, 993 F.3d 230, 236-37 & n.7 (4th Cir. 2021).[3]

Doe has not demonstrated "articulable doubt" in the outcome of his case.  The fact that Doe disagrees with the investigator's findings, or the Hearing Panel's adoption of those findings, does not suffice.  *See Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 462 (S.D.N.Y. 2015); *see also Doe v. Colgate Univ.*, 760 F. App'x 22, 33 (2d Cir. 2019).  There was ample evidence to support a finding, by a preponderance of the evidence, that Doe performed oral sex on Smith without Smith's consent while Smith was asleep.

Moreover, even assuming Doe had demonstrated "articulable doubt" about that finding, he offers no evidence that gender bias caused the outcome.  His claim of gender bias amounts to nothing more than speculation that he was treated differently because he is a male.  *See Doe v. Trs. of Dartmouth Coll.*, No. 21-CV-085-JD, 2021 WL 2857518, at *5 (D.N.H. July 8, 2021)

---

[3] While the First Circuit has used the term "motivating factor" in student Title IX cases, it did so because the parties cited that language in *Yusuf*, without addressing whether "motivating factor" or "but for" is the correct standard.  *See Boston College I*, 892 F.3d at 90 & n.12; *Haidak v. Univ. of Mass.-Amherst*, 933 F.3d 56, 74 & n.11 (1st Cir. 2019). *Yusuf* borrowed the "motivating factor" language from the Civil Rights Act of 1991, which applies to Title VII, not Title IX.  *See Sheppard*, 993 F.3d at 236-37 & n.7 (citing *Yusuf*, 35 F.3d at 715).  Title IX requires "but for" causation.  *Id.* (citing *Bostock v. Clayton Cty., Ga.*, 140 S. Ct. 1731, 1739 (2020); *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 351-52 (2013); *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176, (2009); *Jackson v. Birmingham Bd. of Ed.*, 544 U.S. 167, 184 (2005)).  Moreover, if a "motivating factor" analysis were applied, Doe cannot meet even that lower standard, for the reasons discussed below.

(dismissing Title IX erroneous outcome claim for lack of evidence of gender bias).

To be actionable under Title IX, allegations of bias must pertain to the specific individuals involved in the disciplinary proceeding at issue.  *See Haidak v. Univ. of Mass.-Amherst*, 933 F.3d 56, 75 (1st Cir. 2019); *see also Doe v. Univ. of Denver*, 952 F.3d 1182, 1200 (10th Cir. 2020); *Doe v. St. Joseph's Univ.*, 832 F. App'x 770, 774 (3d Cir. 2020); *Anderson v. Trs. of Dartmouth Coll.,* No. 19-CV-109-SM, 2020 WL 7129968, at *15 (D.N.H. Dec. 4, 2020); *Dismukes v. Brandeis Univ*., No. CV 19-11049-LTS, 2021 WL 1518828, at *3 (D. Mass. Apr. 16, 2021); *Doe v. W. New England Univ.*, 228 F. Supp. 3d at 188-89 (citing *Mallory v. Ohio Univ.*, 76 F. App'x 634, 640 (6th Cir. 2003)).  Doe, however, has not identified any statements, nor any other evidence, which indicates any anti-male bias on the part of the investigator who made the findings (himself a male) or the Panel that adopted those findings.

Nor will such evidence be forthcoming in discovery.  Stackow has investigated multiple cases involving female complainants and male respondents all without bias and with outcomes of both responsible and not responsible. *Stackow Decl.*, ¶ 7.  Nor is there any pattern of bias in the decisions of the Hearing panelists.  *Strong Decl.*, ¶¶ 15-18.

Nor is Doe's erroneous outcome claim supported by the cases on which he relies.  *Pl. Mem*. at 18-19.  Those cases all involved allegations of clear procedural irregularities and/or significant evidentiary weaknesses where female complainants were believed or favored over male respondents.  *See Gischel v. Univ. of Cincinnati*, 302 F. Supp. 3d 961, 972-75 (S.D. Ohio 2018); *Doe v. Oberlin Coll.*, 963 F.3d 580, 581 (6th Cir. 2020); *Prasad v. Cornell Univ.*, No. 5:15-CV-322, 2016 WL 3212079, at *1 (N.D.N.Y. Feb. 24, 2016).  In this case, however, there are no such procedural irregularities and no such evidentiary weaknesses, and both the

complainant and respondent are male.[4]

## 2.   Selective Enforcement

Doe alleges that Dartmouth "selectively enforced" its sexual misconduct policy against

him because he is a male.  Pl. Mem. at 19-21.  As Doe acknowledges, a student claiming

selective enforcement of disciplinary policies in violation of Title IX must show that the decision

to initiate a disciplinary proceeding against him and/or the severity of the penalty imposed was

affected by his gender.  Pl. Mem. at 19 (citing *Doe v. Amherst Coll.*, 238 F. Supp. 3d  195, 223

(D. Mass. 2017); see also *Haidak,* 933 F.3d at 74 (citing *Yusuf,* 35 F.3d at 715).  To meet that

burden, a male student must show that a female student in circumstances "sufficiently similar" to

his – i.e., one accused of, or found responsible for, similar conduct – was treated more favorably

and that gender bias caused that discrepancy.  *Haidak,* 933 F.3d at 74; *Yusuf,* 35 F.3d at 715; *see*

*also Doe v. St. Joseph's Univ.,* 832 F. App'x at 774; *Mallory,* 76 F. App'x at 641; *Austin v. Univ.*

*of Oregon*, 925 F.3d 1133, 1138 (9th Cir. 2019).

Doe cites no such evidence.  He claims "upon information and belief [that] Dartmouth

has treated intoxicated female ***accusers*** who allegedly initiated or were complicit in the sexual

interaction differently than [Dartmouth] treated [him]" and "can cite to at least one relevant

example without the benefit of discovery."  *Pl. Mem.* at 20 (emphasis added).  Doe's argument

fails not only because he offers no actual evidence for the Court to consider, but also because

cases involving female ***accusers*** are irrelevant to a "selective enforcement" claim in any event.

Doe must be able to show that similarly situated female ***respondents***, not accusers, have been

treated differently from him.  Moreover, even if he had identified such a comparator, he also

---

[4] Doe's cases also were decided on motions to dismiss, where the Court was accepting plaintiff's factual allegations
as true, rather than looking for evidence sufficient to support a request for mandatory injunctive relief.  *Gischel, 302*
*F. Supp. 3d* at *972-75; Doe v. Oberlin Coll.*, 963 F.3d at 581; *Prasad v. Cornell Univ.*, 2016 WL 3212079, at *1.

would need to offer evidence that gender was the cause of the different treatment by the decision-makers in this case.  *See Haidak*, 933 F.3d at 75.  He obviously has not done so.

To the extent Doe is asserting "selective enforcement" relative to his status as an accuser, that claim fails because he offers no evidence that Dartmouth has treated female accusers differently from him, and in fact the evidence is to the contrary.  As discussed above:  when Clemens learned that Doe considered himself to be a victim of Smith's conduct, she reached out to Doe and invited him to file a complaint; Doe's complaint against Smith was investigated in the same manner as Smith's complaint against Doe; and the evidence is contrary to Doe's speculation that Dartmouth in other cases has treated intoxicated female accusers differently from him.

### III.   DOE HAS NOT DEMONSTRATED A LIKELIHOOD OF IRREPARABLE HARM IF A PRELIMINARY INJUNCTION DOES NOT ISSUE.

Even if Doe had demonstrated a likelihood of success on the merits, which he has not done, he has failed to establish that he will suffer irreparable harm in the absence of preliminary injunctive relief.  Irreparable harm is "a substantial injury that is not accurately measurable or adequately compensable by money damages."  *Ross–Simons of Warwick v. Baccarat, Inc.*, 102 F.3d 12, 19 (1st Cir. 1996).  "A finding of irreparable harm must be grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store."  *Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004).  Moreover, "an attempt to show irreparable harm cannot be evaluated in a vacuum; the predicted harm and the likelihood of success on the merits must be juxtaposed and weighed in tandem."  *Ross-Simons*, 102 F.3d at 19.

Doe has failed to meet his burden to show that, without injunctive relief, he likely will suffer an immediate, substantial injury that is not adequately compensable by money damages.

He claims that his expulsion or even a "gap" in his education will cause him to suffer lost educational and career opportunities, *Pl. Mem.* at 3, but courts in the First Circuit repeatedly have held that such harms are entirely compensable with money damages.  *See Doe v. Trs. of Dartmouth Coll.*, 1:19-cv-00013-JL (D.N.H. Jan. 2019), Dkt. Nos. 17 & 29; *Doe v. Williams College*, 3:16-cv-30184-MGM, Dkt. No. 65 & 74 at pp. 51-55 (D. Mass. March 29, 2017); *Doe v. Amherst Coll.,* No. 14-CV-30114-MGM, 2014 WL 12597613, at *3 (D. Mass. July 28, 2014) (citing *Powell v. City of Pittsfield*, 221 F. Supp. 2d 119 (D. Mass 2002)); *Bray v. Worcester Polytechnic Inst.*, 540 F. Supp. 3d 94, 103 (D. Mass. 2021).  Other courts have reached the same conclusion.  *See, e.g., Phillips v. Marsh*, 687 F.2d 620, 622 (2d Cir. 1982); *Doe v. Texas A&M Univ.*, No. CV H-20-4332, 2021 WL 257059, at *8 (S.D. Tex. Jan. 26, 2021); *Montague v. Yale Univ.*, No. 3:16-CV-00885(AVC), 2017 WL 4942772, at *4 (D. Conn. Mar. 8, 2017).

This case is easily distinguished from *Doe v. Middlebury Coll.*, No. 1:15-cv-192-JMG, 2015 WL 5488109 (D. Vt. Sept. 16, 2015), on which Doe relies.  *Pl. Mem.* at 21-22.  That case involved "a unique situation" in which the college sought to re-investigate a case in which the plaintiff had been exonerated, notwithstanding that its policy did not allow for a second investigation.  2015 WL 5488109 at *3.  There is no such policy violation in this case.  In addition, the plaintiff in *Middlebury* had obtained a specific job offer, which he stood to lose without injunctive relief.  *Id.*  No such circumstance exists in this case, where Doe was on a voluntary leave from medical school at the time of his expulsion and he has cited no specific job offer or other opportunity that he will lose without injunctive relief.

The fact that Doe already was on leave at the time of his expulsion also distinguishes this case from the ones Doe cites for the supposed harm resulting from any gap in a student's education.  *Pl. Mem.* at 21-22.  Unlike the plaintiffs in all of those cases, Doe will have to

explain a gap in his education regardless of whether the Court grants an injunction, as he was on an extended leave before the disciplinary action at issue.  *See Isaacs v. Trs. of Dartmouth Coll.*, 2017 WL 4119611, at *5 (denying injunction where injunction requested would not prevent the harm plaintiff seeks to avoid).

Doe's reliance on *Doe v. Univ. of Cincinnati*, 223 F. Supp. 3d 704 (S.D. Ohio 2016), *aff'd*, 872 F.3d 393 (6th Cir. 2017), *Pl. Mem.* at 21, also is unavailing.  The decision in that case stemmed from the "unique" nature of plaintiff's graduate program, in which a one-year suspension would have affected plaintiff's ability to pursue a career.  *Id.* at 712.  Here, there is no such evidence.  Doe offers only his own, self-serving speculation that if he prevails at trial and his separation is expunged, he nevertheless will be unable to continue his medical education and finish his degree.  *Pl. Mem.* at 3, 22.  Similarly, there is no evidence that Doe will suffer stigma resulting from his conduct case in the event that he prevails and his separation is expunged.

Doe's argument that irreparable injury arises from a denial of "equal protection," *Pl. Mem.* at 22, also is unavailing.  Doe's constitutional rights are not implicated in this case, as Dartmouth is a private university, not a state actor.  *See Doe v. Trs. of Bos. Coll.*, 942 F.3d 527, 533 (1st Cir. 2019) (*Boston College II*); *Heineke v. Santa Clara Univ.*, 965 F.3d 1009, 1012 (9th Cir. 2020).  Doe's claim that his rights under Title IX implicate rights protected by the Fourteenth Amendment is incorrect.  Title IX applies to Dartmouth not under the Fourteenth Amendment, but by virtue of the Spending Clause in Article I of the Constitution – i.e., compliance with Title IX is a condition for Dartmouth to receive federal funding.  *See Gebser*, 524 U.S. at 286-87.  Doe's reliance on *Portz v. St. Cloud State Univ.*, 196 F. Supp. 3d 963, 973 (D. Minn. 2016), on this point is misplaced because that case involved a public university, not – as Doe states in his memorandum – a private one.  *Id.* at 977.  Doe's "equal protection" argument

also fails because his Title IX claims are without merit in any event, for the reasons discussed above.

## IV.   THE BALANCE OF HARMS AND THE PUBLIC INTEREST WEIGH AGAINST INJUNCTIVE RELIEF.

Dartmouth has a strong interest in enforcing its student conduct policies, including its prohibition against sexual misconduct.  Courts should not discount the harm resulting from an injunction that undermines a college's authority to address such misconduct.  *See Boucher v. Sch. Bd. of Sch. Dist. of Greenfield*, 134 F.3d 821, 827 (7th Cir. 1998) (vacating preliminary injunction where allowing a student to remain enrolled undermined the school's authority to take disciplinary action).  It is well-settled that Courts should not lightly interfere with such judgments.  *See Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 648 (1999) ("courts should refrain from second-guessing the disciplinary decisions made by school administrators"); *Boston College II*, 942 F.3d at 535 (quoting *Schaer*, "Courts are chary about interfering with academic and disciplinary decisions made by private colleges and universities")*; Havlik*, 509 F.3d at 35 (courts must accord a school some measure of deference in matters of discipline); *Morale*, 422 F. Supp. at 1004–1005 ("federal courts do not sit in judgment of the wisdom of school administrators").

Dartmouth's interest in protecting sexual assault victims such as Smith[5] from experiencing a hostile educational environment similarly weighs in favor of denying the injunction.  *Doe v. The Ohio State Univ.*, 136 F. Supp. 3d 854, 871 (S.D. Ohio 2016) (citing *Bonnell v. Lorenzo*, 241 F.3d 800, 822 (6th Cir. 2001)).  Where, as in this case, a university has found sexual harassment in violation of Title IX, it must take steps effectively to address the harassment.  Dartmouth's judgment in this case was that Doe's conduct warranted his separation

---

[5] Smith remains enrolled at Geisel.  *Clemens Decl.*, ¶ 15.

and public policy favors the upholding of such judgments.

The balance of equities and the public interest thus favor preserving the status quo, rather than granting the extraordinary remedy of mandatory injunctive relief.

### CONCLUSION

The Court should deny Doe's motion for a preliminary injunction.

TRUSTEES OF DARTMOUTH COLLEGE,

/s/ Daron J. Janis
Daryl J. Lapp (admitted pro hac vice)
Elizabeth H. Kelly (admitted pro hac vice)
Daron L. Janis (N.H. Bar No. 271361)
LOCKE LORD LLP
111 Huntington Avenue
Boston, MA 02199
(617) 239-0100 telephone
(617) 227-4420 facsimile
daryl.lapp@lockelord.com
liz.kelly@lockelord.com
February 10, 2022                         djanis@lockelord.com

### Certificate of Service

I certify that on February 10, 2022, I caused the foregoing document to be served on counsel of record for all parties that have appeared to date through the Court's CM/ECF system.

/s/ Daron L. Janis
Daron L. Janis

25

103052944v.10