UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

John Doe

    v.

Trustees of Dartmouth College

Civil No. 22-cv-018-LM
Opinion No. 2022 DNH 049 P

# O R D E R

Before the court is plaintiff John Doe's motion for a preliminary injunction (doc. no. 3).  Doe is a former student at Dartmouth's Geisel School of Medicine. After a Dartmouth Title IX hearing panel found Doe responsible for sexual assault, the school expelled him.  Doe now seeks an order enjoining Dartmouth from enforcing the expulsion pending the outcome of the case.  For the reasons that follow, the court denies Doe's request for a preliminary injunction.

## BACKGROUND[1]

In the summer of 2020, Doe and his roommate Sam Smith[2] were both fourth-year medical students at Dartmouth's Geisel School of Medicine.

On the evening of July 11, 2020, the roommates ordered take-out sushi, drank beer and cocktails, and watched a movie during which they both fell asleep on the couch.  In the early morning hours of July 12, a disputed incident occurred.

---

[1] These facts are drawn from the complaint, as well as testimony and exhibits from the evidentiary hearing on this motion.

[2] John Doe and Sam Smith are both pseudonyms, used to protect the students' privacy.

Smith alleges that he woke up to a sensation of "caressing" around his penis, and that as he was opening his eyes, he saw his underwear was pulled down, and then saw Doe perform oral sex on him.  On the other hand, Doe alleges that he was "blacked out" drunk, and that Smith woke him up by running Smith's fingers through his hair.  Doe alleges that Smith lifted Doe's head to Smith's already exposed penis, and then Doe performed oral sex on Smith.

A couple days after the incident, Doe's mother called to tell him that his aunt had been admitted to the Intensive Care Unit with a high fever.  The family was worried that the aunt had contracted COVID-19.  Feeling overwhelmed, Doe drove to a bridge in Vermont, got on the ledge, and prepared to jump.  Doe then realized that it would only hurt his family more if he harmed himself, so he called his father and told him everything that had happened.  Doe's father suggested that Doe come home to be with his family.  Doe followed his father's advice and decided to take a leave of absence from Dartmouth.

At first, Smith did not want to press charges or file a Title IX complaint.  But in April 2021, Smith asked Dartmouth's Title IX Coordinator whether Doe was returning to Dartmouth.  The coordinator informed Smith that Doe would return to school in the spring of 2022, while Smith was still enrolled.  Doe alleges that this information was incorrect because he had informed the school that he planned to return in the fall of 2022.

Once Smith learned that Doe would be returning to school while Smith was still enrolled, Smith filed a formal Title IX complaint against Doe in late April 2021.

Ex. 11 at 13; Ex. 16 at 14.  In early May, the Title IX Coordinator issued a notice of investigation to both parties and retained an outside investigator to conduct interviews.

In June, Doe filed his own Title IX complaint against Smith, alleging that Smith had sexually assaulted him by initiating intercourse with Doe while Doe was incapacitated due to alcohol.

In late August, the investigator issued a final report regarding both Smith's and Doe's complaints.  The investigator found sufficient evidence to support Smith's claim that Doe had sexually assaulted Smith.  With respect to Doe's claim, however, the investigator found that there was not sufficient evidence to support Doe's assertion that Smith had sexually assaulted Doe.  In October, a hearing panel upheld the investigator's findings and decided to expel Doe from Dartmouth.  Doe appealed the decision to the Dean of the Medical School, who ultimately upheld the hearing panel's decision on November 10, 2021.  Doe then filed this suit and motion for a preliminary injunction on January 20, 2022.


## LEGAL STANDARD

"A preliminary injunction is an extraordinary and drastic remedy that is never awarded as of right."  Peoples Fed. Sav. Bank v. People's United Bank, 672 F.3d 1, 8-9 (1st Cir. 2012).  To obtain a preliminary injunction, a plaintiff must establish that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of a preliminary injunction, (3) the balance of

hardships tips in the plaintiff's favor, and (4) public interest favors an injunction.
Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).

## DISCUSSION

Courts reviewing requests for preliminary injunctions generally begin by analyzing the first factor, likelihood of success on the merits. Doe v. Amherst Coll., No. 14-cv-30114-MGM, 2014 WL 12597613 at *2 (D. Mass. July 28, 2014). Yet "if the moving party cannot demonstrate that he is likely to suffer irreparable harm in the absence of a preliminary injunction, the remaining factors become matters of idle curiosity." Id. Indeed, the First Circuit has noted that the irreparable harm element is a "necessary threshold showing for awarding preliminary injunctive relief." Matos ex rel. Matos v. Clinton School Dist., 367 F.3d 68, 74 (1st Cir. 2004). With this in mind, the court analyzes the irreparable harm element at the outset.

Courts are split on whether a gap on a plaintiff's resume resulting from expulsion after a school disciplinary procedure suffices to show a likelihood of irreparable harm. Some courts have found that even if a student is ultimately allowed to return to school, having a gap on one's resume is an irreparable harm that will follow the student for the rest of their professional life. See, e.g., Doe v. Middlebury Coll., No. 1:15-cv-192-jgm, 2015 WL 5488109, at *3 (D. Vt. Sept. 16, 2015); King v. DePauw Univ., No. 2:14-cv-70-WTL-DKL, 2014 WL 4197507, at *13 (S.D. Ind. Aug. 22, 2014). Because future schools or employers would likely ask about the resume gap, the student could be required to disclose that they were

found responsible for sexual misconduct. King, 2014 WL 4197507, at *13. These courts find that there is no way to erase the stigma of such a resume gap, and thus it is not compensable with money damages. See id. In such cases, the student's education had not yet been interrupted, and thus taking leave from the school would also mean the student would not graduate with his senior class. See, e.g., Middlebury Coll., 2015 WL 5488109, at *3. Some courts also hold more generally that the loss of educational or career opportunities is not readily compensable in money damages. See, e.g., Ritter v. Oklahoma, No. CIV-16-0438-HE, 2016 WL 2659620, at *3 (W.D. Okla. May 6, 2016).

Other courts hold that such harms are not irreparable. See Doe v. Texas A&M Univ., No. CV H-20-4332, 2021 WL 257059, at *8 n. 1 (S.D. Tex. Jan. 26, 2021) (collecting cases); Hodges v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll., No. CV 20-1456, 2020 WL 5017665, at *4 (E.D. La. Aug. 25, 2020) (collecting more cases). These courts reason that a gap on a resume can be remedied with monetary damages. See, e.g., Doe v. Princeton Univ., 3:20-cv-4352-BRM-TJB, 2020 WL 2097991, at *7 (D.N.J. May 1, 2020). Further, these courts hold that harms such as losing the opportunity to graduate with one's contemporaries can also be adequately remedied with money damages. See, e.g., Montague v. Yale Univ., No. 3:16-CV-00885(AVC), 2017 WL 4942772, at *4 (D. Conn. Mar. 8, 2017).

Given this split in authorities, Doe might have a close case on irreparable harm if his facts were more compelling. But Doe's case is distinguishable for two

reasons.  First, he already has a gap on his resume.  Following the disputed incident between him and Smith, he took a voluntary leave of absence from Dartmouth starting in July 2020.  Doe states that this gap can be accounted for by his need for personal and family leave during the COVID-19 pandemic.  He then alleges that if "the gap continues longer, and the expulsion is enforced, Doe will be forced to explain the expulsion as the reason for the gap . . . ."  Doc. no. 3 at 22.  Doe does not allege, however, why—if his lawsuit is ultimately successful and he is allowed to return to Dartmouth—a slightly longer gap would necessarily raise any greater suspicions.  To meet the irreparable harm prong, Doe must show that irreparable harm is likely absent an injunction, not merely that it is possible.  Winter, 555 U.S. at 20.  Further, given that Doe has taken a leave from school already, he will not be graduating with his medical school class, and thus an additional delay will not cause greater harm in that respect.

Second, Doe's lack of urgency in litigating this motion further weakens his assertion that he will suffer irreparable harm.  The Dean of the Medical School upheld Doe's expulsion on November 10, 2021.  When Doe filed his complaint and preliminary injunction motion on January 20, 2022, he did not specify a date by which he hoped to return to Dartmouth.  In his reply brief, he stated that he planned to return "no earlier than the fall of 2022."  Doc. no. 22 at 3.  He specifically stated that he was "not asking to come back sooner than that, or even before Smith graduates."  Id.

The court held a status conference on February 3, 2022, and the parties asked to schedule the preliminary injunction hearing in late March. Dartmouth's counsel represented that he understood Doe hoped to return to Dartmouth for the fall 2022 semester, and thus Doe would suffer no prejudice from waiting almost two months for the preliminary injunction hearing. Doe's counsel did not contradict this statement. The court therefore scheduled the hearing for March 29, 2022.

At another status conference the day before the preliminary injunction hearing, the court specifically asked the parties when Dartmouth's fall semester began—i.e., by what date Doe hoped to return to school. The parties represented that it would be in September. At the preliminary injunction hearing the next day, however, the parties revised that statement. They stated that for fourth-year medical students at Dartmouth, the "fall 2022" semester actually begins on April 11, 2022—a mere week and a half after the preliminary injunction hearing. Counsel acknowledged that this calendar is counter-intuitive.

Doe's own delay in asserting to the court that he in fact hopes to return to school on April 11 suggests that he will not actually suffer irreparable harm if he is not allowed to return by that date. If Doe were genuinely at risk of irreparable harm, he presumably would not have assented to waiting almost two months for the preliminary injunction hearing. See Montague, 2017 WL 4942772, at *4 (in similar case, student's four-month delay in filing preliminary injunction motion weighed against his assertion of irreparable harm); see also Citibank, N.A. v. Citytrust, 756 F.2d 273, 276 (2d Cir. 1985) ("Preliminary injunctions are generally granted under

the theory that there is an urgent need for speedy action to protect the plaintiffs'
rights.  Delay in seeking enforcement of those rights, however, tends to indicate at
least a reduced need for such drastic, speedy action.").  Moreover, if Doe were
genuinely at risk of irreparable harm on April 11, he should have been aware of
that date when the court inquired.

Finally, Doe makes two other arguments about irreparable harm, neither of
which are persuasive.  First, he argues that in addition to the resume gap, Doe faces
the harms of being forced to continue his education at either an osteopath school, or
at a medical school outside the United States.  Of course, if Doe's case is ultimately
unsuccessful on the merits and his expulsion stands, he would be harmed.  But he
has not explained why delaying his ability to return to Dartmouth while this case is
litigated would force him to enroll in a different school.  The court finds this
argument unpersuasive.  Second, in Doe's brief he argues that absent an injunction,
he will be irreparably harmed because he is being discriminated against on the
basis of sex.  At the hearing, however, his counsel conceded that he was not pressing
the Title IX sex discrimination claims at the preliminary injunction stage.

In sum, Doe has failed to show that he is likely to suffer an irreparable harm
without an injunction.  Because this is a necessary threshold showing, see Matos,
367 F.3d at 74, the court ends its analysis without considering the parties'
arguments regarding likelihood of success on the merits, the balance of harms, and
the public interest.

## CONCLUSION

For the foregoing reasons, the court denies Doe's motion for a preliminary injunction (doc. no. 3).

SO ORDERED.

_____
Landya McCafferty
United States District Judge

April 4, 2022

cc:  Counsel of Record