UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

JOHN DOE,

                    Plaintiff,

        v.                                              Civil Action No.: 22-CV-00018-LM

TRUSTEES OF DARTMOUTH COLLEGE,

                    Defendant.

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION TO DISMISS

        Plaintiff John Doe ("Doe") filed his Verified Complaint against Defendant Trustees of Dartmouth College ("Dartmouth") on January 20, 2022, alleging violations of Title IX and breach of contract, and seeking a preliminary injunction.  On March 21, 2022, Dartmouth filed its Motion to Dismiss.  Doc. no. 23.  As set forth below, because Doe has pleaded sufficient facts to state a claim under Title IX (Count I) and for breach of contract (Counts II through V), this Court should deny Dartmouth's Motion to Dismiss.

## I.      FACTS

        Doe incorporates the facts alleged in the Complaint (doc. no. 1) as if fully set forth herein, as they are the facts this Court must accept as true at this stage and weigh against Dartmouth's Motion to Dismiss.  However, Doe provides the following summary for the convenience of the Court and to refute several erroneous allegations made by Dartmouth in its Motion.

### a.   The Sexual Encounter Between Smith and Doe

        John Doe and Sam Smith were both fourth-year medical students at the Geisel School of Medicine at Dartmouth ("Geisel") and roommates.  Compl. ¶¶ 20-22.  On the night of July 11, 2020, the roommates decided to stay in, order sushi, and play drinking games.  *Id.* ¶ 24.  Doe

became incredibly intoxicated, and he experienced "blackouts." *Id.* ¶ 26.  The roommates then decided to watch a movie, and Doe shortly fell asleep on the couch. *Id.* ¶ 27.

The next thing Doe remembers is Smith running his fingers through Doe's hair and lifting Doe's head toward Smith's exposed, erect penis. Compl. ¶ 28.  Then, Doe remembers performing oral sex on Smith's penis until he became tired and fell back asleep on the couch. *Id.* ¶ 29.  Doe then remembers being woken up by Smith, who told him he felt uncomfortable with what just happened. *Id.* ¶¶ 30-31.  Doe did not remember what had just happened. *Id.* ¶ 31.

### b. Smith and Doe Both Filed Title IX Complaints.

One or two days later, after receiving word that his aunt was in the hospital and feeling overwhelmed, ashamed, and violated, Doe drove out to a bridge in Vermont, got on the ledge, and prepared to jump. Compl. ¶¶ 37-38.  Doe realized that harming himself would hurt his family more, so he got down and called his father to tell him what happened in the early morning of July 12, 2020. *Id.* ¶ 39.  Doe's father urged him to take a leave of absence from Geisel to take care of his mental health and to help his family during a difficult time, so he did. *Id.* ¶ 40.  Doe later informed the Geisel registrar that he intended to return in the Fall of 2022, after Smith had graduated. *Id.* ¶ 43.

In April 2021, Smith asked Dartmouth's Title IX Coordinator Kristi Clemens ("Clemens") whether Doe was returning to Geisel. Compl. ¶ 43.  Clemens incorrectly informed Smith that Doe would return in the Spring of 2022, while Smith was still there. *Id.*  Because Clemens told Smith that Doe planned to return while Smith was still a student at Geisel, Smith filed a formal Title IX complaint against Doe on April 28, 2021. *Id.* ¶ 44.  Smith alleged that Doe sexually assaulted him "by having oral intercourse with him while he was asleep." *Id.* ¶ 3.  On May 5, 2021, Clemens

issued a Notice of Investigation to both parties, which alleged "that on July 12, 2020 [Doe] sexually assaulted [Smith] by having oral intercourse with him while he was asleep." *Id.* ¶ 47.

On July 15, 2021, Doe filed a formal Title IX complaint against Smith, alleging that Smith had engaged in sexual misconduct by initiating the oral sexual intercourse with Doe while Doe was incapacitated by alcohol. Compl. ¶ 48. Clemens issued a Notice of Investigation to both parties containing Doe's allegations the next day. *Id.* ¶ 49.

### c. Dartmouth's Investigation Was Not Fair, Thorough, and Impartial.

Dartmouth's Title IX investigations are governed by both its Sexual and Gender-Based Misconduct Policy ("SMP") and its Process for Resolving Complaints Against Students ("PRP"). Doc. nos. 1-1 and 1-2, respectively. The SMP defines relevant terms like "sexual assault", "sexual contact", "consent", and "incapacitation". Compl. ¶¶ 51-55. The PRP outlines the procedure for the investigation and promises that the Title IX office will conduct a "prompt, thorough, fair and impartial investigation." *Id.* ¶ 57. The PRP also promises that the Notice will include the "nature of the reported conduct and the reported policy violations," and that the Title IX Office will issue a supplemental notice if different or additional policy violations are revealed. *Id.* ¶ 58.[1]

The Title IX Office appointed Michael Stackow ("Stackow") to conduct the investigation. He interviewed Doe three times, Smith twice, and nine other witnesses. Compl. ¶¶ 68-70. Stackow issued a preliminary report to which the parties responded. *Id.* ¶¶ 71-72. On August 31, 2021, Stackow issued a final report, in which he found that there was "***sufficient evidence*** to support a

---

[1] Subsequent action by Dartmouth has revealed that its current practice is to apply the substantive policy in effect at the time the event allegedly occurred and the procedural policy in effect at the time the formal complaint is made. Dartmouth did not follow this procedure in this matter, which resulted in Doe having fewer procedural rights. We intend to amend the complaint to allege a claim regarding the procedural policy applied in this matter under Title IX and under a breach of contract theory. *See Doe v. Rensselaer Polytechnic Institute*, No. 20-cv-1185, 2020 WL 6118492, at *7-11 (N.D.N.Y. Oct. 16, 2020) (suggesting that if a school chooses to apply the old, less protective policy when the new more protective policy is implemented and available is some evidence of sex discrimination under Title IX).

finding, by a preponderance of the evidence, that [Doe] engaged in sexual contact with [Smith] at a time when [Smith] was unable to consent because he was incapacitated due to being asleep." *Id.* ¶ 74 (quoting doc. no. 17-13 (Final Report), at 51). Dartmouth falsely alleges that Stackow specifically stated in the Final Report that the "'sexual contact' at issue was 'oral sexual intercourse.'" Doc. no. 24 (Memorandum in Support of Motion to Dismiss), at 4 (citing doc. no. 17-13, at 50). However, the quote Dartmouth references is not so clear:

> The Policy defines, in pertinent part, sexual contact as sexual intercourse, including oral sexual intercourse. In this matter, both parties agree that they engaged in oral sexual intercourse, specifically that [Smith's] penis penetrated [Doe's] mouth. Accordingly, the Investigator finds, by a preponderance of the evidence, that the parties engaged in sexual contact.

Doc. no. 17-13, at 50. That paragraph ignores the other half of the definition of "sexual contact," which is "sexual touching." Compl. ¶ 97. Even if Stackow did draft that paragraph in order to equate sexual contact with oral sexual intercourse, Stackow made the finding that Doe engaged in oral sexual intercourse while Smith was asleep despite Smith never stating in any interview that he was asleep when the oral sex began, and that he in fact saw Doe place Smith's penis into his mouth for the first time. Compl. ¶¶ 92-96. Doe also made it clear throughout the investigation that he understood that Smith never stated during his interviews that oral sex had happened while Smith was asleep, and that Doe understood from the evidence presented that he could not be found responsible because Smith had not alleged in interviews what he alleged in the Notice. *See* doc. nos. 17-9 (Doe Response to Initial Report); 17-14 (Doe Response to Final Report). In the complaint, Doe has alleged that Stackow did not find that Doe performed oral sexual intercourse on Smith while Smith was asleep. Compl. ¶¶ 85, 90-91. Instead, Stackow found that sexual contact occurred while Smith was asleep which includes sexual intercourse **and** sexual touching, the latter of which Smith actually stated occurred while he was asleep. Compl. ¶¶ 90-91, 97. That

4

finding constitutes a procedural error and a violation of Dartmouth's contractual obligation to Doe.[2]  Compl. ¶ 101.

Stackow also found that "while [Doe] may have subjectively experienced an alcohol-induced fragmentary blackout, the available evidence show[ed] that [Doe] initiated the sexual contact while [Smith] was asleep," and that, therefore, there was "***insufficient evidence*** to support a finding, by a preponderance of the evidence, that sexual contact [between the parties] occurred at a time when [Doe] was unable to consent due to incapacitation."  Compl. ¶ 75 (quoting doc. no. 17-13, at 51-52).  Stackow made that finding because he believed that Doe "demonstrated through his physical actions that he freely chose to engage in sexual contact."  Compl. ¶ 102 (quoting doc. no. 17-13, at 51).  That finding is contrary to Dartmouth's policy on incapacitation and constitutes procedural error and breach of contract.  *See* Compl. ¶¶ 105-09.

Dartmouth also applied the preponderance of the evidence standard differently in this case because Doe is a male.  Compl. ¶ 110.  Upon information and belief, Dartmouth has credited intoxicated cisgender female students alleging sexual assault against cisgender male students when the female student could not remember specific details at all or in a linear fashion, whereas here, Stackow held Doe's lack of memory against his credibility.  *Id.*

The Hearing Panel reviewed the materials and heard testimony, then issued a finding of responsible against Doe on October 6, 2021, permanently expelling Doe from Dartmouth.  Compl. ¶¶ 77-80.  Doe appealed the finding to the Dean of Geisel and the Dean upheld the finding of responsible on November 10, 2021.  *Id.* ¶¶ 81-82.

---

[2] Additionally, at the Preliminary Injunction Hearing, Stackow testified that he determined that the "caressing" described by Smith while he was asleep was oral intercourse.  However, Stackow conceded that he conducted no analysis of the meaning of the word "caressing" and that when he specifically asked Smith what "caressing" meant, Smith responded, "jerking off" and not oral intercourse.  Stackow also conceded that "jerking off" is not oral intercourse.  Taken together, Stackow testified that he misapprehended the word "caressing" and that his wrong interpretation of that word resulted in an erroneous finding that oral intercourse took place while Smith was asleep.

4874-7039-2348, v. 1

## II.       STANDARD OF REVIEW

"To state a claim for relief, a complaint must set forth '[f]actual allegations [that are] enough to raise a right to relief above the speculative level, on the assumption that all of the allegations in the complaint are true (even if doubtful in fact).'" *Franchi v. New Hampton Sch.*, 656 F. Supp. 2d 252, 254 (D.N.H. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "This showing 'requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Id.* "By the same token, the showing does not require 'detailed factual allegations,' simply 'enough factual matter (taken as true) to suggest' the plaintiff's right to relief." *Id.*

The First Circuit has instructed the "plausibility" standard of *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), must be treated flexibly in discrimination cases:

> [S]ome latitude may be appropriate in applying the plausibility standard in certain types of cases…Generally speaking, these are cases in which a material part of the information needed is likely to be within the defendant's control . . . *Cf. Grajales*, 682 F.3d at 49 (noting that "'[s]moking gun' proof of discrimination is rarely available . . . at the pleading stage").

*Garcia–Catalan v. United States*, 734 F.3d 100, 104 (1st Cir. 2012). While it is true that "in a civil rights action as in any other action subject to notice pleading standards, the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why-although why, when why means the actor's state of mind, can be averred generally," *Doe v. Amherst Coll.*, 238 F. Supp. 3d 195, 224 (D. Mass. 2017) (citing *Educadores Puertorriquenos en Accion v. Hernandez*, 367 F.3d 61, 68 (1st Cir. 2004)), the "plausibility required to infer unlawful motive 'does not impose a probability requirement at the pleading stage,'" but instead "calls for enough fact to raise a reasonable inference that discovery will reveal evidence of illegal motive." *Doe v. Brown Univ.*, No. 17-cv-00191 (D. Mass. Aug. 27, 2018) (Doc. 29) (quoting *Twombly*).

Further, it is generally accepted that, in the discrimination context, a court "cannot hold plaintiffs to a standard that would effectively require them, pre-discovery, to plead evidence." *Cooperman v. Individ. Inc.*, 171 F.3d 43, 48-9 (1st Cir. 1999). Of course, it is well settled that in "considering the sufficiency of the facts, the court 'must take the allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiff[ ].'" *Leader v. Harv. Univ. Bd. of Overseers*, No. CV 16-10254-DJC, 2017 WL 1064160, at *1 (D. Mass. Mar. 17, 2017).

Additionally, as Dartmouth notes in its memorandum of law, "the Court may consider documents which are integral to or sufficiently referenced in the complaint, or the authenticity of which is not disputed by the parties, without converting the motion into one for summary judgment." Doc. no. 24 (Memorandum in Support of Motion to Dismiss), at 6 (citing *Ironshore Specialty Ins. Co. v. United States*, 871 F.3d 131, 135 (1st Cir. 2017); *Young v. Lepone*, 305 F.3d 1, 11 (1st Cir. 2002); *Clorox Co. v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 32 (1st Cir. 2000)). For ease of reference, such documents will be referenced by their corresponding document number when filed as exhibits by Dartmouth in response to the motion for preliminary injunction.[3]

## III.    ARGUMENT

### a.  John Doe has alleged sufficient facts to state claims for breach of contract (Counts II-V).

Doe has alleged sufficient facts to state a claim that Dartmouth breached its contract with Doe by failing to provide adequate notice, by conducting an investigation that was not "fair, thorough, and impartial", and by violating the Family Educational Rights and Privacy Act

---

[3] While this Court may consider the Final Report in ruling on Dartmouth's motion "to clarify the content of" the Report," to the extent Dartmouth has submitted it "to challenge or supplement plaintiff's allegations . . . . and demonstrate the 'thoroughness of the investigation, the investigator's detailed findings, and the substantial evidence on which those findings were based[,] [s]imply put, '[t]his is clearly impermissible.'" *Doe v. Trs. of Dartmouth Coll.*, No. 18-cv-40-LM, 2018 WL 2048384, at *1 (D.N.H. May 2, 2018); *Doe v. Harvard Univ.*, 462 F. Supp. 3d 51, 59-60 (D. Mass. 2020).

4874-7039-2348, v. 1

("FERPA").  The university-student relationship is contractual in nature.  *See Gamble v. Univ. Sys. of N.H.*, 136 N.H. 9, 13 (1992); *Marlowe v. Keene State Coll.*, 189 F. Supp. 3d 326, 332 (D. Mass. 2016) (applying New Hampshire law).  "The terms of this contract [are] the terms contained in the Student Handbook and other college materials."  *Bleiler v. Coll. of Holy Cross*, No. 11-111541-DJC, 2013 WL 4714340, at *14 (D. Mass. Aug. 26, 2013).

When reviewing the contractual relationship and the relevant documents, courts "employ a reasonable expectations standard," which requires that they "ask what meaning the party making the manifestation, the university, should reasonably expect the other party[, the student,] to give it."  *Doe v. Trs. of Bos. Coll.*, 892 F.3d 67, 80 (1st Cir. 2018) (internal citations and quotation marks omitted).  "To the extent that there is any ambiguity in contract language, such ambiguity is to be construed against the University as drafted . . . ."  *Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561, 595 (D. Mass. 2016).  "In the context of disciplinary hearings, [courts] 'review the procedures followed to ensure that they fall within the range of reasonable expectations of one reading the relevant rules.'"  *Id.* (quoting *Cloud v. Trs. of Bos. Univ.*, 720 F.2d 721, 724-25 (1st Cir. 1983)).  "'[I]f the facts show that the university has failed to meet [the student's] reasonable expectations' the university has committed a breach."  *Id.* (quoting *Walker v. President & Fellows of Harv. Coll.*, 840 F.3d 57, 61 (1st Cir. 2016)).

In addition to the "reasonable expectations" standard, breach of contract claims arising out of student conduct investigations at private institutions are subject to a "basic fairness" standard. Dartmouth's "obligation to provide basic fairness in its proceedings is separate from and in addition to its contractual obligation to follow the rules it set forth" in its sexual misconduct policies.  *Brandeis Univ.*, 177 F. Supp. 3d at 601.  "Basic fairness" in university disciplinary proceedings includes both "procedural fairness"—"whether the process used to adjudicate the

matter was sufficient to provide the accused student a fair and reasonable opportunity to defend himself"—and "substantive fairness"—"whether the decision was unduly arbitrary or irrational, or tainted by bias or other unfairness." *Id.* at 602. "It is well-established . . . that a private university is not required to adhere to the standards of due process guaranteed to criminal defendants or to abide by rules of evidence adopted by courts. . . . However, courts may refer to those rules in evaluating the fairness of a particular disciplinary hearing." *Id.* (internal citations and quotation marks omitted).

Under both the "reasonable expectations" and the "basic fairness" standards, Doe has plead sufficient facts to state a claim that Dartmouth breached the contract between them.

> i. *Doe has sufficiently alleged that Dartmouth breached its contract with Doe by failing to provide Doe sufficient notice of the allegations against him (Count II).*

Doe has pleaded sufficient facts to plausibly allege that Dartmouth failed to provide adequate notice of the allegations against Doe because the basis for Dartmouth's erroneous finding that Doe was responsible does not comport with the allegation stated in the Notice Doe received from the Title IX office. Compl. ¶¶ 83-101. The Notice alleged that "on July 12, 2020 [Doe] sexually assaulted [Smith] by having oral sexual intercourse with him **while he was asleep**." Compl. ¶ 83 (emphasis added); *see also* doc. no. 7-6 (Notice of Investigation), at 1. Contrary to Dartmouth's contention, Stackow did not find in his written report that Doe performed oral sex on Smith while he was asleep. Compl. ¶ 85. Nor could he credibly make such a finding because Smith never claimed that Doe performed oral intercourse on him while he was asleep in any of his interviews with Stackow. *Id.* Rather, Smith, a Geisel medical student, reported:

> And I was asleep, felt a sensation **like somebody was caressing me** around my penis and I shifted a little bit. I was lying down, there was the ottoman just in front, to the side. I was lying down, I shifted, with this sensation and half-opened my eyes. I was still in a **sleepy state** and looked down, saw [Doe] kneeling in front

> *of the couch, in front of me.  And my jeans had been unbuttoned, with my boxer briefs pulled down and I was fully erect.  I guess it totally shocks, still not knowing if this was real or if I was dreaming and I kept my eyes half open, just like they are right now.  When I first moved and shifted and aroused, I looked down and he was looking up at me, **he wasn't touching me**.  But as I mentioned, my penis was out, my pants were unbuttoned and erect.  And then after I settled, stopped moving, **I saw him reach down and grab my penis and put it in his mouth**.*

Compl. ¶ 92 (quoting doc. no. 17-13 (Final Report), at 9 (bold added)).  In his second interview, Smith said that he "*saw him go down and grab it and start to suck it **again***" but when Stackow questioned his use of the word "again"—expressly giving Smith the opportunity to allege he felt Doe perform oral sex on him before he awoke—Smith clarified that he "*hadn't seen it before that.  . . .  it kind of felt like somebody was **caressing** [him] or something.  . . .  So, when [he] saw him grab it and suck it, was the **first time** [he] saw him do it.*"  Compl. ¶ 94 (quoting doc. no. 17-13, at 10 (bold added)).  Significantly, Smith described the caressing "sensation" he felt while he was asleep as similar to someone "jerking [him] off" and not as oral intercourse.  Compl. ¶ 93.

From those statements, Dartmouth argues that Stackow concluded that "[Smith's] account is that he was asleep during this activity and therefore was unable to and did not consent to the activity."  Doc. no. 17-13, at 42.  The sentence prior to that one notes, however, that Smith "**saw**" Doe place Smith's penis in his mouth.  *Id.* (emphasis added).  Stackow's acknowledgement that Smith "saw" Doe put Smith's penis in Doe's mouth is inconsistent with a finding that Smith was asleep when the oral intercourse began.  In Stackow's listed "Findings of Fact" he specifically found that:

> [Smith] was asleep on the couch when he felt a sensation **as if someone was caressing his penis**, a sensation he described as similar to a sexual dream.  [Smith] then shifted his body to the right and as he did so, saw that his underwear was pulled down to the point where the shaft of his penis was exposed over the waistband of his underwear.  [Smith's] penis was erect.

> [Doe] was on his knees on the floor in front of [Smith's] penis.  At one point during the sexual contact, [Doe] paused and looked up at [Smith].

10

> After [Smith] shifted his body [Doe] took [Smith's] penis with his left hand and placed it in his mouth.  [Doe] then moved both his head and his hand up and down on the shaft of [Smith's] penis.

*Id.* at 46 (numbered bullets omitted, bold added).  Based on those findings, Stackow concluded that he had "found sufficient evidence, by a preponderance of the evidence standard, that [Smith] was asleep when the sexual contact began."  Compl. ¶ 90 (quoting doc. no. 17-13, at 51).  Nowhere does Stackow find that Smith was asleep when the ***oral sexual intercourse*** began.  Compl. ¶ 85.

In an attempt to ameliorate this error, Stackow testified at the Title IX hearing that the "sexual contact" he was referring to in the report included oral sexual intercourse.  *See* doc. no. 17-15 (Hearing Transcript), at 13.  In Dartmouth's sexual misconduct policy, "sexual contact" is the broad umbrella term that includes sexual intercourse (including, oral), and sexual touching, *i.e.*, "caressing."  *See* Compl. ¶ 97 (citing doc. no. 1-1 (SMP), at VII.B).  Stackow's testimony that "the definition of sexual assault includes the term sexual contact, which is an umbrella term that includes the activity of oral sexual intercourse," proves too much.  Doc. no. 17-15, at 14.  Stackow's use of the term "sexual contact" in the report includes, under the policy, *both* the "caressing" that Smith alleged he felt while he was asleep and the oral sexual intercourse Smith alleged in the Notice but never claimed actually happened during his statements to Stackow.  It, therefore, cannot be fairly said that Stackow found in his report that Doe performed oral sexual intercourse while Smith was asleep as stated in the Notice.  In the alternative, as discussed, *supra* at footnote 2, at best based upon a misapprehension of applicable definitions and Smith's interview, Stackow made the factually incorrect finding that "caressing" while Smith was asleep equated to oral intercourse notwithstanding Smith's clear statements that "caressing" was "jerking off" and not oral intercourse.

Dartmouth analogizes this case to *Doe v. University of Arkansas – Fayetteville*, in which the complainant first alleged that she was incapacitated, but in her appeal of the Title IX Coordinator's initial decision claimed that the respondent had used force because "when a student performs sexual acts on an incapacitated person, the acts are committed 'by force.'" 974 F.3d 858, 867 (8th Cir. 2020). There, the court found that the respondent was on notice of the complainant's allegations and had an opportunity to respond because she made the allegations before the case proceeded to the hearing. Unlike in *Fayetteville*, here, Smith did not change the "type" of case he was alleging. His allegation remained that Doe performed oral sex on him while he was asleep. However, the statements he gave to support that allegation did not actually support that allegation. In other words, Smith's allegation remained that he was asleep when Doe performed unwanted oral sexual intercourse on him, but his statements in his interviews were that he was awake before Doe began to perform oral sex and that he saw it occur.

This case is more analogous to *Velez-Santiago v. State University of New York at Stony Brook*, in which the court overturned the penalty imposed upon the student because the "record reflect[ed] that the complainant did not report to investigators that the petitioner engaged in the act which formed the basis for the hearing panel's conclusion that the petitioner violated" the code of conduct. 170 A.D.3d 1182, 1183 (N.Y. App. Div. 2019). Similarly, here, Smith has not stated to Stackow during the investigation that Doe performed oral sexual intercourse on him while he was asleep; therefore, there is no allegation on which Stackow or the hearing panel could have formed the conclusion that he did. *See also Doe v. George Wash. Univ.*, 366 F. Supp. 3d 1, 11 (D.D.C. 2018) (". . . A.C. had no recollection of talking to Ms. Roe either during the Uber ride or in the bathroom of the dorm after Ms. Roe returned. Without explanation, the Appeals Panel found that this evidence 'generally corroborate[d]' Ms. Roe's statements that she had spoken with someone

12

on the phone during the Uber ride and that she had spoken to A.C. about the assault when she got back to the dorm. . . . This conclusion is divorced from the evidence and not explained by GW."). Doe defended himself based on the Notice and the facts that Smith presented during the investigation, stating over and over again both verbally and in writing that, with his understanding of the Notice and the facts alleged, he could not be found responsible. Never did Stackow correct Doe's understanding of the Notice nor did Stackow or Dartmouth amend the Notice to conform to the facts Smith presented during the investigation as required by the PRP, which provides: "If the investigation reveals the existence of additional or different potential policy violations, including a violation of an interim protective measure, the Title IX Office will issue a supplemental notice of investigation." See doc. no. 1-2, at VII.A.2. Instead, Dartmouth found Doe responsible for something Smith never alleged during the investigation or at any time other than in the Notice. As such, Doe has sufficiently pleaded a claim for breach of contract based on lack of adequate notice.[4]

> ii. *Doe has sufficiently alleged that Dartmouth breached its contract with Doe by violating FERPA (Count V).*

Doe has sufficiently alleged that Dartmouth violated FERPA when Clemens incorrectly informed Smith that Doe would be returning to campus before Smith graduated. FERPA is a federal law that protects the privacy of student education records. 20 U.S.C. § 1232g; 34 C.F.R. pt. 99. There is no private right of action under FERPA, *see, e.g.*, *Gonzaga Univ. v. Doe*, 536 U.S. 273, 287 (2002), but a FERPA violation can serve as the basis for a breach of contract claim, *see, e.g.*, *Frank v. Univ. of Toledo*, 621 F. Supp. 2d 475, 485 (N.D. Ohio 2007).

Universities who receive federal funds are not allowed to release education records to third parties without the written consent of the student or their parents with limited exceptions. 20 U.S.C. § 1232g(b)(1). A fellow student is not such an exception. *See id.* Following a Title IX

---

[4] Moreover, it would have changed the emphasis of Doe's defense if he understood the shifting nature of the claim.

investigation, a school may disclose to the victim only "the final results of the disciplinary proceeding." 34 C.F.R. § 99.31(a)(13). There is no disclosure exception for a student who is inquiring about filing a Title IX complaint but has not yet done so.

Dartmouth argues that the claim must be dismissed because Dartmouth disclosed "directory information" that schools are allowed to release without the prior consent of the student if the school provides an "annual notification" to the students defining what constitutes "directory information." *See* 34 C.F.R. § 99.37. Dartmouth's definition of "directory information" includes "enrollment status" and "dates of attendance." *See* doc. no. 17-4 (Records Policy), at 3. "Dates of attendance" is defined as "the period of time during which a student **attends** or **attended** an educational agency or institution. Examples of dates of attendance include an academic year, a spring semester, or a first quarter." 34 C.F.R. § 99.3 (emphasis added). "The term does not include specific daily records of a student's attendance at an educational agency or institution." *Id.* Under the same regulation, examples of "enrollment status" are presented as "undergraduate or graduate, full-time or part-time." *Id.* Similarly, the U.S. Department of Education Federal Student Aid Office provides in its glossary, "Enrollment status is reported by the school you attended, and indicates whether you **are**, or **were**, full-time, three-quarter time, half-time, less than half-time, withdrawn, graduated, etc." *Glossary*, Federal Student Aid, https://studentaid.gov/help-center/answers/topic/glossary/articles (last visited Feb. 22, 2022) (emphasis added). The information that Clemens disclosed to Smith was not directory information based on the applicable definitions. Rather, it was inaccurate speculation on Doe's subjective future intent to enroll at a particular time.

Dartmouth also argues that even if the disclosure violated FERPA, and thus Dartmouth policy, the violation would fail to support a breach of contract claim because the harm was

unforeseeable.  Doe's expulsion was a clearly foreseeable consequence of the exposure because, as Stackow found in his report on more than one occasion, Smith filed his complaint seeking formal resolution **because** he believed that Doe was returning to Geisel before Smith would graduate and leave.  *See* Compl. ¶ 44; *see also* doc. no.17-13, at 14 ("[Smith] said that one he learned that [Doe] planned to return to school, he decided that he wanted to proceed with a formal complaint.").  The false information that Clemens provided to Smith in violation of FERPA directly led to Smith filing his Title IX complaint and to Doe being expelled.  Compl. ¶ 44.  Indeed, it was the purpose of Smith's inquiry and complaint.  Compl. ¶ 43.  Dartmouth cannot credibly argue that Clemens could not reasonably foresee that a responding student could be expelled as a result of a complaining student filing a formal Title IX complaint for sexual assault against them.

Therefore, Doe has sufficiently alleged that Dartmouth breached its contract with him by violating his rights under FERPA.

> iii. *Doe has sufficiently alleged that Dartmouth breached its contractual obligation to provide a fair, thorough, and impartial investigation by failing to properly apply the preponderance of the evidence standard regarding Doe's incapacitation (Count III).*

Doe has sufficiently alleged that the investigator and the hearing panel failed to properly apply the preponderance of the evidence standard when evaluating Doe's incapacitation due to alcohol, thereby breaching Dartmouth's obligation to provide a fair, thorough, and impartial investigation.  Compl. ¶¶ 102-09.  Doe consistently maintained throughout the investigation that he was incapacitated by alcohol to the point that he experienced fragmentary blackouts while Smith took advantage of his intoxication and induced Doe to perform oral sex on him.  Compl. ¶¶ 26-29.  Stackow acknowledged in his final report that Doe "may have subjectively experienced an alcohol-induced fragmentary blackout" but inexplicably decided that did not matter because "the available evidence show[ed] that [Doe] initiated the sexual contact, while [Smith] was asleep."

15

Compl. ¶ 104 (quoting doc. no. 17-13, at 51-52).  Stackow also held Doe's incapacitation due to

alcohol against him, finding that Doe's

> inability to provide detail or specificity about the event negatively affected the
> reliability of the other information he provided.  For example, [Doe] was unable to
> explain how the act of [Smith] running his fingers through his hair caused his head
> to lift to initiate the sexual activity, as he contended.  Similarly, [Doe] could not
> elaborate on what took place between the time he saw [Smith's] exposed, erect
> penis and when he put his mouth on [Smith's] penis.

Compl. ¶ 105 (quoting doc. no. 17-13, at 45).

Stackow's crediting of Doe's statement that he was blackout drunk during the encounter

and, at the same time, consciously initiating sexual contact cannot both be true under Dartmouth's

policy or a proper application of the preponderance of the evidence standard.  Under Dartmouth's

policy:

> Where alcohol or other drugs are involved, evaluating incapacitation requires an
> assessment of how the consumption of alcohol and/or drugs affect a person's
> decision-making ability; awareness of consequences; ability to make informed,
> rational judgments; capacity to appreciate the nature and quality of the act; or level
> of consciousness.  The assessment is based on objectively and reasonably apparent
> indications of incapacitation when viewed from the perspective of a sober,
> reasonable person.

Compl. ¶ 107 (quoting doc. no. 1-1, at VIII.C).

Stackow's finding that Doe's actions in initiating sexual activity were "inconsistent with

him being incapacitated", Compl. ¶ 108, ignores that incapacitation by alcohol can also impede a

person's ability to consent to an act he allegedly initiated, including impairing his ability to make

informed, rational judgments, and a person's capacity to appreciate the nature and quality of the

act.  Stackow's inconsistent findings regarding Doe's incapacitation are not supported by a

preponderance of the evidence if that standard were fairly, thoroughly, and impartially applied, as

it must be under Dartmouth's policies.

16

In *Doe v. Amherst College*, the court denied the school's motion to dismiss the plaintiff's claim that the school breached its contractual obligations to the student where its "decision was not supported by a preponderance of the evidence." 238 F. Supp. 3d at 216. Specifically, the student alleged that because the evidence showed, and the school based its finding of responsibility on the student's credible statement that he was blackout drunk, "there was insufficient evidence that, under the terms of the *Student Handbook*, he was responsible for sexual misconduct." *Id.* (emphasis in original). The court in *Amherst College* expressly rejected the school's argument that the school's policy regarding incapacitation "does not absolve a student intoxicated or impaired by drugs or alcohol, including to the point of blackout, from responsibility for failing to obtain consent." *Id.* at 216. Rather, in denying the school's motion for judgment on the pleadings, the court held that "a student reading the Policy could reasonably expect that while 'blacked out' they could be victims of sexual misconduct, but their own actions could not violate the Policy.'" *Id.* at 217; *see also, e.g.*, *Doe v. Princeton Univ.*, No. 3:19-CV-07853-BRM-TJB, 2020 WL 7381392, at *4 (D.N.J. Dec. 16, 2020) (denying motion to dismiss where plaintiff sufficiently alleged that university breached contract where it, among other things, "failed to address Doe's report that Roe had sex with him while he was incapacitated" and failed to "conduct an inquiry and determine, by a preponderance of the evidence whether the Policy was violated") (internal citation and quotation marks omitted). Similarly, in this case, Stackow credited Doe's statement that he was blackout drunk during the encounter while nonetheless finding Doe responsible for sexual misconduct under Dartmouth's policy. Compl. ¶¶ 102-09. Doe's interpretation of Dartmouth's definition of incapacitation and that of the court in *Amherst College* are also consistent with New Hampshire law under which a person accused of a crime may present evidence of their intoxication to negate an element of the charged offense. *See* RSA 626:4; *State*

*v. Thomas*, 154 N.H. 189, 194 (2007) (evidence of intoxication negated the element of intent in a homicide case).

In stating this claim, Doe is not simply disagreeing with Stackow's factual findings as Dartmouth alleges.  Rather, Doe is arguing that the conclusions that were drawn from the facts presented are "unduly arbitrary or irrational" or "tainted by bias or other unfairness," in violation of Dartmouth's own policies.  *Brandeis Univ.*, 177 F. Supp. 3d at 602.  Doe is not asking, as Dartmouth suggests, *see* doc. no. 24, at 16-17, for the Court to require more of Dartmouth than it commits itself to do in the contract between the college and its students.  Instead, Doe is asking the Court to evaluate whether Dartmouth provided a fair, thorough, and impartial investigation into his level of incapacitation, as required by its own policy.  By the terms of its own policy, Dartmouth did not.  Therefore, Doe has sufficiently alleged facts to state a claim for breach of contract on this basis.

> iv. *Doe has sufficiently alleged that Dartmouth breached its contractual obligation to provide a fair, thorough, and impartial investigation by applying the preponderance of the evidence standard differently because Doe is male (Count IV).*

Doe has sufficiently alleged that Dartmouth applied the preponderance of the evidence standard differently in this case because Doe is a male student rather than a female student in violation of its contractual obligation to provide Doe with a fair, thorough, and impartial investigation.  Compl. ¶ 110, 136-44.  The Complaint alleges at least one instance where Dartmouth has credited intoxicated cisgender female students alleging sexual assault against cisgender male students when the female student could not remember specific details of the alleged assault either at all or in a linear fashion, whereas the investigator held Doe's fragmented memory against his credibility, and counsel reasonably believes other comparators will be revealed through discovery.  Compl. ¶ 141.

18

In *Amherst College*, the court denied the school's motion to dismiss and allowed to proceed the student's claim that the school breached its contractual obligations by "conduct[ing] its disciplinary proceeding against [the student] in a discriminatory manner due to his gender . . . ." 238 F. Supp. 3d at 218.  There, the student alleged that the school had encouraged the female accuser to file a formal complaint against him but had not similarly encouraged him to file a complaint when he alleged the female student may have sexually assaulted him while he was incapacitated by alcohol.  *See id.*  Similarly, in *Doe v. Embry-Riddle Aeronautical University, Inc.*, the court denied summary judgment on plaintiff's the breach of contract claim because there were existing issues of material fact "regarding whether the investigation was impacted by gender bias" where the school credited and thoroughly investigated the allegations of an intoxicated cisgender female student but did not credit or investigate as thoroughly the allegations of a cisgender male student under similar circumstances.  No. 6:20-cv-1220-WWB-LRH, 2021 WL 5141032, at *6 (M.D. Fla. Nov. 4, 2021); *see also, e.g.*, *Doe v. Rollins Coll.*, 352 F. Supp. 3d 1205, 1212 (M.D. Fla. 2019) (denying motion to dismiss because plaintiff sufficiently alleged, in part, a biased investigator assessed the female as more credible than the male).

In this case, Doe has sufficiently alleged on information and belief that Dartmouth has applied the preponderance of the evidence standard differently in cases where a cisgender female student has alleged that she was sexually assaulted while she was too intoxicated to remember specific details of the alleged assault clearly or in a linear fashion.  Under those circumstances, her statements were fully credited by the investigator and were considered evidence of trauma.

Therefore, Doe has alleged sufficient facts to state a claim that Dartmouth breached its contractual obligation to him by holding his incapacitation due to alcohol against his credibility where it has not done so when the complaining student is a cisgender female.  Such a practice is

inconsistent with Dartmouth's own gender discrimination policy and is evidence that Dartmouth

has applied the preponderance of the evidence standard differently based on the gender of the

complaining student.

> **b. John Doe has alleged sufficient facts to state a claim for violations of Title IX (Count I).**

Accepting the well-pleaded facts alleged in the complaint as true, with all reasonable

inferences drawn in Doe's favor, as this Court must at this stage, Doe has stated a claim under both

the erroneous outcome and selective enforcement theories of Title IX.

> *i. Erroneous Outcome*

To survive a motion to dismiss, a plaintiff need only plead specific facts that support a

minimal plausible inference of "discrimination on account of sex in the imposition of university

discipline" that influenced the outcome of the proceeding. *Doe v. Columbia Univ.*, 831 F.3d 46,

56 (2d Cir. 2016). Alternatively, to defeat a motion to dismiss, a plaintiff can plead sufficient facts

to suggest "'some articulable doubt on the accuracy of the outcome of the disciplinary proceeding,

and indicating that gender bias was a motivating factor.'" *Boston Coll.*, 892 F.3d at 90 (quoting

*Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994)).[5]   Under either standard, taking the

---

[5] In considering whether a plaintiff has met this standard in the Title IX context, the First Circuit has recognized, "Neither the Supreme Court nor this Circuit have adopted a framework for analyzing claims by students challenging a university's disciplinary procedures as discriminatory under Title IX." *Doe v. Trs. of Bos. Coll.*, 892 F.3d 67, 90 (1st Cir. 2018). In that case, the "parties agree[d] that the applicable standard . . . requires that a plaintiff offer evidence 'cast[ing] some articulable doubt on the accuracy of the outcome of the disciplinary proceeding,' and indicating that 'gender bias was a motivating factor.'" *Id.* (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994)). In a footnote, however, the Court noted:

> We also note that the Second Circuit recently held that "the temporary presumption afforded to plaintiffs in employment discrimination cases under Title VII applies to sex discrimination under Title IX as well." *Doe v. Columbia Univ.*, 831 F.3d 46, 56 (2d Cir. 2016). *But see* [*Doe v.*] *Miami Univ.*, 882 F.3d [579,] 589 [(6th Cir. 2018)] (declining to follow the Second Circuit's reasoning for extending Title VII's temporary presumption to Title IX for sex discrimination plaintiffs because of differing Sixth Circuit precedent regarding the pleading standard under Title VII). We take no position as to whether such a presumption applies to Title IX claims because even if it did, it would not affect the outcome of this case.

allegations in the Complaint as true, as this Court must, *see Franchi*, 656 F. Supp. 2d at 255, Doe

has pleaded sufficient facts to state a claim under Title IX.

A plaintiff can allege facts sufficient to "cast some articulable doubt on the accuracy of the

outcome of the disciplinary proceeding" by alleging, for example, "particular evidentiary

weaknesses behind the finding of an offense such as a motive to lie on the part of a complainant

or witnesses, particularized strengths of the defense, or other reason to doubt the veracity of the

charge.  A complaint may also allege particular procedural flaws affecting the proof."  *Yusuf*, 35

F.3d at 715.  The Second Circuit made it clear that "the pleading burden in this regard is not

heavy."  *Id.*

To plead sufficient facts "indicating that gender bias was a motivating factor" in the

outcome of the Title IX proceeding, a plaintiff's allegations may include, ". . . *inter alia*, statements

by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of

decision-making that also tend to show the influence of gender."  *Id.*  "Following *Iqbal* and

*Twombly*, conclusory allegations of gender bias, unsupported by even minimal data or credible

anecdotal references, are insufficient evidence of gender bias."  *Id.* (internal citation and quotation

marks omitted).  However, a plaintiff "may rely on circumstantial evidence alone to prove that

there was a discriminatory pattern of decision-making" and to show that gender bias was a

"motivating factor" behind the report finding him responsible.  *Trs. of Bos. Coll.*, 892 F.3d at 92.

And, a court cannot hold a plaintiff alleging a discrimination claim "to a standard that would

---

*Trs. of Bos. Coll.*, 892 F.3d at 90 n.13.

> While the First Circuit in *Cohen v. Brown Univ.*, 991 F.2d 888, 901-02 (1st Cir. 1993), declined the
> university's invitation to apply the burden-shifting framework applicable under Title VII where it would have made
> it more difficult for the plaintiffs to state a claim for disparate athletic opportunity than the framework already set out
> in the statute for those types of cases, the Court in *Boston College* suggested that it is open to considering importing
> the framework in the context of Title IX adverse outcome claims.  Doe respectfully requests that this Court apply the
> framework as set out in *Doe v. Columbia University*, *supra*, such that the Complaint in this case must support only a
> "minimal plausible inference" of discriminatory intent to survive a motion to dismiss.

effectively require them, pre-discovery, to plead evidence." *Cooperman*, 171 F.3d at 48-49. Further, this Court should not adopt, as Dartmouth urges, the Fourth Circuit's "but-for" causation requirement, but rather follow the First Circuit's use of the "motivating factor" requirement. *See* doc. no. 24, at 8 & n.4.

In this case, Doe has sufficiently alleged that Dartmouth procedurally erred in ways, motivated by gender, that resulted in an erroneous outcome. Regarding "articulable doubt on the accuracy of the outcome of the disciplinary proceeding," Doe has alleged abundant evidence that Dartmouth's proceeding was deeply flawed, as set out in Sections I & III.a, *supra*, which casts articulable doubt on the outcome. Specifically, Doe has alleged that Dartmouth inappropriately applied the preponderance of the evidence standard by finding that Doe, an intoxicated student who "subjectively experienced an alcohol-induced fragmentary blackout," lacked credibility because he could remember some but not all of the specific details of the event in a way that it would not have done if Doe were female. Compl. ¶¶ 110, 114-21.

Further, Dartmouth's finding that Doe "subjectively experienced an alcohol-induced fragmentary blackout," but that his actions in initiating the oral sex were inconsistent with incapacitation, is itself inconsistent with Dartmouth's definition of incapacitation. Compl. ¶¶ 104-05. The definition of incapacitation does not exclude people who initiate sexual acts. Compl. ¶ 107. And, it includes the consideration of the effect of alcohol on: a "person's decision-making ability; awareness of consequences; ability to make informed, rational judgments; capacity to appreciate the nature and quality of the act; or level of consciousness." Compl. ¶ 107. Courts have found an allegation of the inappropriate application of the definition of incapacitation to cast "articulable doubt" on the accuracy of a disciplinary proceeding's outcome and to sufficiently state a claim of an erroneous outcome. *E.g.*, *Doe v. Oberlin Coll.*, 963 F.3d 580, 588 (6th Cir. 2020)

4874-7039-2348, v. 1

(holding that Doe had sufficiently stated his claim that the college's decision led to an erroneous outcome where the investigator found that the female accuser was too intoxicated to consent but did not find that she was incapacitated, and, per the college's policy, only incapacitation invalidates consent).

The Complaint alleges other disciplinary matters in which Dartmouth has credited the account of at least one intoxicated female student alleging sexual assault, which Doe did in his formal complaint, against a relatively sober male student when the female student could not remember specific details of the alleged assault either at all or in a linear fashion. This is sufficient at the pleading stage as additional specific instances and comparators can be revealed through the discovery process, the evidence of which is solely in Dartmouth's possession.

The facts as plead in Doe's Complaint are sufficient to "raise a reasonable inference that discovery will reveal evidence of" gender discrimination and, therefore, are sufficient to survive dismissal at this stage. *See Doe v. Brown Univ.*, No. 17-cv-00191 (D. Mass. Aug. 27, 2018) (Doc. 29) (quoting *Twombly*).

### ii. Selective Enforcement

To allege selective enforcement, a plaintiff must plead "his gender was a motivating factor behind either the College's decision to pursue disciplinary action against him or its decision as to the severity of the punishment." *See Amherst Coll.*, 238 F. Supp. 3d at 222-223. "Unlike an erroneous outcome claim, a plaintiff can prevail on a selective enforcement claim without disturbing the factual findings made in a disciplinary proceeding." *Id.* at 222 (citing *Yusuf*, 35 F.3d at 715).

Doe has sufficiently alleged that, upon information and belief, Dartmouth has treated intoxicated female students who alleged they had been sexually assaulted by relatively sober male

23

students, which Doe alleged in his formal complaint against Smith, differently than they have treated Doe when considering his formal complaint against Smith.  Compl. ¶¶ 110, 114-21.  Doe can cite to at least one relevant example without the benefit of discovery, but, as stated in the preceding section, that knowledge is the result of privileged communications.  Based on that example and with the benefit of discovery, Doe will be able to make "specific factual allegations that the College responded differently to similar reports when the genders of the potential victims and aggressors were different" and those specific allegations can provide "a foundation from which a court can infer [that] gender-based discrimination may have played a role in the College's responses."  *Amherst Coll.*, 238 F. Supp. 3d at 218.

This case is not the typical Title IX case in that both parties are male.  The issue here is that in a situation like this one, where one party is sober and the other is highly intoxicated, if the highly intoxicated one (Doe) were a female, she would have been treated differently than Doe, a male, was treated in this case.  Selective enforcement claims with intoxicated females and sober or relatively-less-intoxicated males have survived motions to dismiss (and motions for summary judgment) in cases where universities have treated the intoxicated females more favorably than the sober or intoxicated males, finding them credible even though they could not remember specific details of the alleged incidents, or they could not remember the events in a linear way.  For example, in *Doe v. Embry-Riddle Aeronautical University*, two students—one male and one female—filed complaints against each other, each alleging that they were too intoxicated to consent, but the university considered only the female student's complaint in its finding against the male.  *See* 2021 WL 5141032, at *3-5.  In *Doe v. Syracuse University*, the court denied summary judgment on a selective enforcement claim where a material dispute remained on Doe's allegation that he was treated differently than his female accuser because they were both too

incapacitated to consent and the university did not properly evaluate that claim. 457 F. Supp. 3d 178, 194-200 (N.D.N.Y. 2020). In *Doe v. Rollins College*, the court allowed the plaintiff's selective enforcement claim to proceed where he alleged that the college did not properly consider his intoxication and encouraged his female accuser to file a complaint, but not him. *See* 352 F. Supp. 3d at 1211-12. These cases, along with the allegations in the Complaint, sufficiently demonstrate that it is likely that Dartmouth treated Doe as an intoxicated male who alleged he was coerced into performing oral sex on a sober male differently than they would treat an intoxicated female who alleged she was coerced into performing oral sex on a sober male.

Dartmouth argues that these cases are not comparators because the cases involve female complainants rather than female respondents. However, Dartmouth seems conveniently to forget, as it did during the investigation, that Doe is both a respondent **and** a complainant. Both his defense and his affirmative allegation are that Smith assaulted him while he was incapacitated by alcohol when Smith guided Doe's head toward Smith's exposed penis. Accordingly, these cases where universities take intoxicated female complainants' allegations seriously and do not discredit their testimony because they cannot remember all the details are relevant to Doe's selective enforcement claim. Thus, Doe has sufficiently alleged Title IX selective enforcement.

## IV.    CONCLUSION

For the reasons stated herein, the Court should deny Dartmouth's Motion to Dismiss as to all counts.

Date: April 18, 2022                             Respectfully submitted,

                                                 /s/ *William E. Christie*
                                                 William E. Christie (NH Bar #11255)
                                                 S. Amy Spencer (NH Bar #266617)
                                                 Olivia F. Bensinger (NH Bar #274145)
                                                 SHAHEEN & GORDON, P.A.
                                                 107 Storrs Street
                                                 Concord, NH 03302
                                                 (603) 225-7262
                                                 wchristie@shaheengordon.com
                                                 saspencer@shaheengordon.com
                                                 obensinger@shaheengordon.com

                                                 *Attorneys for plaintiff John Doe*


## CERTIFICATE OF SERVICE

I, William E. Christie, hereby certify that a copy of the foregoing document, filed through the CM/ECF system, will be served conventionally on all parties or their counsel.

                                                 /s/ *William E. Christie*
                                                 William E. Christie