UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

John Doe

    v.                                  Civil No. 22-cv-018-LM
                                         Opinion No. 2023 DNH 131 P

Trustees of Dartmouth College

### **O R D E R**

Plaintiff John Doe—whom the court refers to using a pseudonym—brings this action against the Trustees of Dartmouth College ("Dartmouth") alleging that Dartmouth violated Title IX of the Education Amendments of 1972 and committed breach of contract in expelling Doe from Dartmouth's Geisel School of Medicine after Dartmouth determined that he sexually assaulted another medical student. Presently before the court is Dartmouth's motion to exclude Doe's expert on lost wages and lost earning capacity pursuant to Federal Rule of Evidence 702, Daubert v. Merrell Dow Pharmaceuticals, Inc., and its progeny. See doc. no. 53. For the following reasons, Dartmouth's motion is granted in part and denied in part.

### STANDARD OF REVIEW

Federal Rule of Evidence 702 is "[t]he touchstone for the admission of expert testimony in federal court litigation . . . ." Crowe v. Marchand, 506 F.3d 13, 17 (1st Cir. 2007). Under that rule, an expert witness may offer opinion testimony if:

    (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue;
    (b) the testimony is based on sufficient facts or data;
    (c) the testimony is the product of reliable principles and methods; and

> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702 (effective until December 1, 2023).[1] The proponent of the expert opinion bears the burden of showing that it is admissible by a preponderance of the evidence. See Martínez v. United States, 33 F.4th 20, 24 (1st Cir. 2022); United States v. Tetioukhine, 725 F.3d 1, 6 (1st Cir. 2013); see also Fed. R. Evid. 702 advisory committee's note to 2023 amendments (explaining that 2023 changes "clarify and emphasize" that preponderance of the evidence standard applies).

The trial judge serves as a gatekeeper. Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597 (1993). When an adverse party lodges an objection to expert testimony under Rule 702, the court must determine whether the testimony satisfies the relevant foundational requirements. See id. "There is an important difference between what is unreliable support and what a trier of fact may conclude is insufficient support for an expert's conclusion." Milward v. Acuity Specialty Prods. Grp., Inc., 639 F.3d 11, 22 (1st Cir. 2011) (emphasis omitted). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596.

---

[1] On December 1, 2023, among other changes, the present language of Rule 702(d) will be amended and replaced with: "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." This change "emphasize[s] that each expert opinion must stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology," but does not impose "any new, specific procedures." Fed. R. Evid. 702 advisory committee's note to 2023 amendments. The result here is the same regardless of whether the pre- or post-2023 amendment language is applied.

## BACKGROUND[2]

The factual background of this case is discussed in the court's order on Dartmouth's motion to dismiss. See doc. no. 42. It is unnecessary to fully recount that background in resolving Dartmouth's Daubert challenge. In short, Doe was a fourth-year medical student at Geisel whom Dartmouth subjected to an internal disciplinary proceeding after Doe's former roommate, Sam Smith,[3] alleged that Doe performed oral sex on him without his consent. Dartmouth ultimately found, pursuant to that proceeding, that Doe sexually assaulted Smith and expelled Doe from Geisel. Doe thereafter brought this action for injunctive and monetary relief, alleging that Dartmouth's disciplinary proceeding failed to abide by the strictures of Title IX as well as its own policies, which Doe contends is a breach of contract.

Dartmouth now seeks to prohibit Doe's expert on lost wages and lost earning capacity—Cyndi Livermore, former Director of ComStock Valuation Advisors, Inc.—from offering expert opinion testimony. Dartmouth attached a copy of Livermore's report to its motion to preclude her from testifying. See doc. no. 54-1. Livermore's report analyzes Doe's lost wages and lost earning capacity as a result of his

---

[2] It does not appear that either party requested a hearing—evidentiary or otherwise—on Dartmouth's motion. See doc. no. 53 at 6; doc. no. 58 at 7. There is no mandatory procedure for addressing Daubert motions. The First Circuit has held that a hearing is not required to determine the reliability of a proffered expert opinion so long as no novel issue is raised. See González-Arroyo v. Drs.' Ctr. Hosp. Bayamón, Inc., 54 F.4th 7, 15 (1st Cir. 2022). As Dartmouth's motion presents no novel issue, and because neither party requested a hearing, the court did not deem a hearing necessary.

[3] As with Doe, the court refers to Smith using a pseudonym.

expulsion based on two potential career paths: internal medicine and cardiology.[4] She ultimately determined that Doe has already suffered damages in the form of lost wages in an amount of at least $429,000 (if he pursued internal medicine) and up to $784,000 (if he pursued cardiology). She further concluded that Doe's future lost earnings will total between $1.52 million (as a practitioner of internal medicine) and $3.97 million (as a cardiologist).

To arrive at these figures, Livermore considered: (1) an estimation of Doe's remaining work life; (2) Doe's anticipated life expectancy; (3) the probability of employment in each career path; and (4) Doe's projected earnings for each career path but-for his expulsion. To determine his but-for earnings, Livermore considered: (a) Doe's earnings prior to his expulsion from Dartmouth; (b) the probability, expectancy, and reasonability of future earnings; and (c) future growth. In addition, Livermore considered Doe's post-expulsion income and projections of actual or mitigated earnings.

## DISCUSSION

Dartmouth makes four arguments to exclude Livermore's testimony. First, Dartmouth argues that Livermore lacks the requisite technical or specialized knowledge to testify as an expert regarding lost wages or lost earning capacity.

---

[4] Doe's complaint states that he planned to pursue a career as a primary care physician upon completion of medical school. See doc. no. 1 ¶ 19. He confirmed as much at his deposition. See doc. no. 54-3 at 5-6. Prior to entering medical school, Doe anticipated working in cardiology after receiving his medical degree. See doc. no. 54-2 at 8. Livermore testified at her deposition that Doe's attorneys asked her to analyze Doe's damages based on pursuing one of these career paths. See id.

Second, Dartmouth argues that Livermore's opinions on Doe's lost earning capacity are irrelevant because Doe's complaint seeks equitable relief in the form of reinstatement at Geisel. Third, Dartmouth argues that Livermore's opinions on lost earning capacity are not based on a reliable methodology. Finally, Dartmouth argues that Livermore's opinions as to money Doe might have earned as a cardiologist are irrelevant because Doe had no plans to pursue cardiology prior to his expulsion. The court addresses each argument in turn.

I.  Livermore Has the Requisite Knowledge to Testify Regarding Lost Wages and Lost Earning Capacity

Dartmouth first argues that Livermore lacks the requisite knowledge to testify as an expert. "Under Rule 702 of the Federal Rules of Evidence, it is the responsibility of the trial judge to ensure that an expert is sufficiently qualified to provide expert testimony." Zibolis-Sekella v. Ruehrwein, Civ. No. 12-cv-228-JD, 2013 WL 12177476, at *2 (D.N.H. Sept. 6, 2013) (ellipsis omitted) (quoting Beaudette v. Louisville Ladder, Inc., 462 F.3d 22, 25 (1st Cir. 2006)). "Thus, 'before accepting expert testimony, a district court must determine that a witness is qualified as an expert by knowledge, skill, experience, training, or education.'" Id. (brackets omitted) (quoting United States v. Vargas, 471 F.3d 255, 262 (1st Cir. 2006)).

Dartmouth argues that Livermore lacks the requisite knowledge to opine as to Doe's lost wages and lost earning capacity because her specialization is in business valuation. Dartmouth further notes that Livermore has not previously testified "as an expert in any case involving a medical student and the interruption

5

of their medical education," and that she "never has testified at a deposition or in court in any case involving the lost wages or lost earning capacity of a medical student or doctor." Doc. no. 53 at 4. In essence, Dartmouth argues that Livermore is not qualified to testify as an expert in this case because she has never before been qualified as an expert in a similar case.

Dartmouth's argument is not persuasive. Livermore is an economist with over a decade of experience in conducting financial analyses. She holds a bachelor's degree in business administration as well as a master's degree in the same. At the time she prepared her report, Livermore was the director of ComStock Advisors, a provider of professional services in the area of business valuation, litigation support services, and management consulting.[5] And, although Livermore acknowledged at her deposition that her professional specialization has been in business valuation, she also testified that she has significant experience conducting financial valuations of the business of primary care physicians and cardiologists. She further testified that she has prior experience conducting lost wages and lost earning capacity analyses. That Livermore has never before conducted a lost wages or lost earning capacity analysis for someone in Doe's precise position does not mean she lacks the requisite knowledge to do so. See United States v. Mahone, 453 F.3d 68, 71 (1st Cir. 2006) (expert need not be "blue-ribbon practitioner" in the relevant discipline in order to have sufficient knowledge); Correa v. Cruisers, a Div. of KCS Int'l, Inc., 298

---

[5] Livermore has since accepted a new position as Vice President of Management Planning, Inc., a firm which offers services materially similar to ComStock.

F.3d 13, 25-26 (1st Cir. 2002) (engineer experienced in repairing engines could opine on defectiveness of fuel management system despite lack of experience with particular engine at issue); 29 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 6264.2 (2d ed.) (observing that most courts conclude that general knowledge in a particular subject area is sufficient to qualify a witness as an expert even if they are not a specialist in the specific aspect of the pertinent subject area).

II.   Doe's Potential Lost Earning Capacity Is Relevant Despite His Request for Injunctive Relief

Rule 702(a) requires that the proffered expert opinion "help the trier of fact to understand the evidence or to determine a fact in issue." Dartmouth asserts that Livermore's opinion on Doe's lost future earnings in the event he cannot complete his medical degree would not assist the jury in determining a fact in issue because Doe seeks equitable relief: reinstatement at Geisel as a student in good standing. Dartmouth contends that Livermore's opinion is immaterial whether Doe prevails or loses at trial. That is, if Doe is successful at trial, Dartmouth contends he will return to Geisel and obtain his medical degree, and will therefore regain his capacity to earn a doctor's income. If, on the other hand, he is unsuccessful at trial, Dartmouth contends he will have no grounds to recover damages in the form of lost earning capacity.

This argument misses the mark. Doe brings claims against Dartmouth sounding in contract and under Title IX's implied private right of action. He seeks injunctive relief in the form of return to Geisel as well as monetary damages. See

7

doc. no. 1 at 25-26. Courts generally will not order equitable relief in Title IX or breach of contract actions if money damages would adequately compensate the plaintiff. See Franklin v. Gwinnett Cnty. Pub. Schs., 503 U.S. 60, 75-76 (1992) (holding that both monetary and equitable remedies are available in a Title IX private right of action, but "it is axiomatic that a court should determine the adequacy of a remedy in law before resorting to equitable relief"); Gutbier v. Hannaford Bros. Co., 150 N.H. 540, 543 (2004) ("[E]quitable jurisdiction lies when there is no plain, adequate and complete remedy at law."). See generally Restatement (Second) of Contracts § 359 (1981) (characterizing the availability of common law breach of contract remedies similarly). As Doe notes in his objection, it is possible that the court decides not to order the injunctive relief he seeks even if he prevails on one or more of his claims. Thus, evidence of Doe's lost earning capacity will assist the jury in understanding the evidence or determining a fact in issue. See Fed. R. Evid. 702(a).

III. Livermore's Opinion Is Based on a Sufficiently Reliable Methodology

Dartmouth next argues that Livermore's opinion is not based on a reliable methodology. Rule 702(c) requires that the expert's opinion be "the product of reliable principles and methods." This "necessitates an inquiry into the methodology and basis for an expert's opinion." Samaan v. St. Joseph Hosp., 670 F.3d 21, 31 (1st Cir. 2012). "Reliability is a flexible inquiry, allowing for consideration of factors like whether the expert's methodology has been objectively tested; whether it has been subjected to peer review and publication; the technique's known or potential error

8

rate; and whether the expert's technique has been generally accepted within the relevant industry." Lawes v. CSA Architects and Eng'rs LLP, 963 F.3d 72, 98 (1st Cir. 2020). However, "[n]otwithstanding the deep dive that courts often take to adequately assess the reliability of expert methodology, . . . they must stop short of weighing the evidence, evaluating credibility, or unnecessarily picking sides." Id. "So long as an expert's . . . testimony rests upon 'good grounds, based on what is known,' it should be tested by the adversarial process . . . ." Milward, 639 F.3d at 15 (quoting Daubert, 509 U.S. at 590).

Dartmouth argues that Livermore's opinion is not based on a reliable methodology because Livermore conceded at her deposition that a proper damages analysis in this case would incorporate a "skills analysis" (i.e., an analysis of the range of jobs a person is qualified to perform in light of their transferable skills and talents) as well as a "labor market analysis" (i.e., an analysis of the jobs and associated earning potential in the job markets accessible to persons with Doe's skills). Dartmouth also takes issue with Livermore's failure to consider the possibility that Doe might earn bonuses or stock options at his current job, or that he might be promoted.

Having reviewed Livermore's report, the court finds that Livermore used a reliable methodology in arriving at her conclusions. In assessing Doe's lost wages and lost earning capacity, Livermore began by considering Doe's remaining life expectancy and the proportion of that period in which he would be expected to work. She then considered Doe's probability of employment, which factored in Doe's

current employment, the likelihood he will be able to complete his medical degree if his expulsion is reversed, the likelihood he will complete his degree if his expulsion is not reversed, and the probability that Doe will match to a residency if he completes his degree. She went on to consider projections of Doe's future earnings in certain medical professions based on published data, discounting future earnings to present value and estimating annual inflation-based raises.

The court agrees with Doe that Dartmouth's arguments go not so much to the reliability of Livermore's methodology, but to the factual inputs she did or did include in conducting her analysis. Dartmouth's contentions—that Livermore should have considered other potential jobs Doe could obtain if he did not complete his medical degree, or the possibilities of promotion, stock options, or bonuses at his current employer—is fodder for cross-examination, not for exclusion of Livermore's testimony. See Lawes, 963 F.3d at 99 ("Daubert does not require that a party who proffers expert testimony carry the burden of proving to the judge that the expert's assessment of the situation is correct; rather, . . . the proponent must show that the expert's conclusion has been arrived at in a scientifically sound and methodologically reliable fashion." (quotation omitted)).

IV. <u>Testimony Regarding Doe's Lost Wages and Lost Earning Capacity as a Cardiologist Will Not Assist the Trier of Fact in Determining a Fact in Issue</u>

Finally, Dartmouth argues that Livermore's opinions as to Doe's lost wages and lost earning capacity as a cardiologist are not grounded in the facts of the case and should not be presented to the jury. On this score, the court agrees with

Dartmouth. As Dartmouth notes, Doe's complaint alleges that he planned to pursue a career as a primary care physician. See doc. no. 1 ¶ 19. Nowhere in his complaint does he allege that he was even considering the possibility of pursuing a career in cardiology. Moreover, Doe confirmed at his deposition that he planned to pursue a career as a primary care physician upon completion of his medical degree.

Under New Hampshire law—applicable to Doe's breach of contract claims—"damages cannot be awarded for 'speculative losses.'" Boyle v. City of Portsmouth, 172 N.H. 781, 792 (2020) (quoting Miami Subs Corp. v. Murray Fam. Tr. & Kenneth Dash P'ship, 142 N.H. 501, 517 (1997)). The available remedies in private Title IX actions mirror those available in traditional contract actions. See Cummings v. Premier Rehab Keller, P.L.L.C., 596 U.S. 212, 217-18, 220-21 (2022). Rather than awarding the injured party for speculative losses, contract damages are intended to place the prevailing party in the position they would have been in had the contract been performed. Audette v. Cummings, 165 N.H. 763, 770 (2013). In this case, had Doe been permitted to complete his medical degree, he states he would have pursued a career as a primary care physician. Wages he might have earned had he chosen a different specialization are not relevant. Therefore, Livermore's opinions on Doe's lost wages and lost earning capacity as a cardiologist will not assist the jury in determining a fact in issue and are not based on the facts of the case. See Fed. R. Evid. 702(a), (d).

11

## CONCLUSION

Dartmouth's motion to exclude the testimony of Cynthia Livermore (doc. no. 53) is granted to the extent it seeks to exclude testimony regarding Doe's lost wages and lost earning capacity as a cardiologist. It is otherwise denied.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

October 18, 2023

cc: Counsel of Record